IN THE UNITED STATES DISTRICT COURT OF NEBRASKA

| | |
|---|---|
| TROY M. HURD, ) | Case No. 4:16-cv-03029-RGK-CRZ |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **AMENDED COMPLAINT** |
| ) | |
| ) | |
| THE CITY OF LINCOLN, a political subdivision, ) | |
| TOM CASADY, JOHN HUFF, PAT BORER, ) | |
| ROGER BONIN, JEANNE PASHALEK, and ) | |
| LEO BENES, in their individual and official ) | |
| capacities ) | |
| ) | |
| Defendants. ) | |

COMES NOW the Plaintiff and for cause of action against Defendants alleges:

**INTRODUCTION**

1.	This is an action under 42 U.S.C.A. §1983, Title VII of the Civil Rights Act of 1964, and the Nebraska Fair Employment Practice Act challenging Defendants' retaliation against Plaintiff for reporting sexual harassment and harassment based on national origin and for complaining about that retaliation internally and by filing civil rights charges with the Nebraska Equal Opportunity Commission/Equal Employment Opportunity Commission.

**VENUE & JURISDICTION**

2.	Plaintiff Troy Hurd resides in Lancaster County.

3.	The City of Lincoln is located in Lancaster County.

4.	Defendants Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes resided in Lancaster County at all relevant times.

1

5. This is an action under the United States Constitution, Federal Law, and State law.

6. The United States District Court of Nebraska has original jurisdiction for the claims arising out of the Constitution and Federal law. The Court has supplemental jurisdiction over the state law claims.

7. All relevant actions took place in Lancaster County, Nebraska.

8. United States District Court of Nebraska is the proper venue for this action.

## INTRODUCTORY ADMINISTRATIVE MATTERS

9. Plaintiff filed a charge of discrimination/retaliation with the Nebraska Equal Employment Opportunity Commission on or about September 11, 2015.

10. A determination is expected in the near future or before this matter is tried.

## FACTUAL BACKGROUND

11. Plaintiff, Troy Hurd (hereinafter "Troy"), was hired by the City of Lincoln as a firefighter on November 1, 2000. Troy has repeatedly received performance evaluations rating Troy's performance above average. Troy is currently a Fire Captain Paramedic for Lincoln Fire and Rescue (hereinafter "LFR").

12. Troy was assigned to training a new recruit class starting on September 7, 2011. Troy trained these recruits alongside of Eddie Mueller (hereinafter "Mueller") and Dallas Fletcher (hereinafter "Fletcher").

13. During the training class, Troy repeatedly witnessed the harassment of the recruits, including Sara Khalil (hereinafter "Khalil"). Khalil was a Kurdish, female firefighter recruit from Iraq.

14. Troy overheard Mueller tell Khalil to "[g]o sit the fuck down!"

15. Khalil reported to Troy that Jamie Pospisil (hereinafter "Pospisil") said to her, "Do you need a fucking interpreter?"

16. Troy reported that he believed that Mueller and Pospisil were harassing Khalil on the basis of her sex and national origin and complained to Chief Roger Bonin (hereinafter "Bonin"), Troy's Supervisor. Bonin passed Troy's complaint to Chief Benes (hereinafter "Benes"), Mueller's supervisor.

17. Benes removed Troy from his training position after Troy made complaints about Mueller's harassment based on sex and national origin of Khalil.

18. On October 26, 2011, Kevin Houfek (hereinafter "Houfek"), firefighter recruit in the same training class as Khalil, reported to Troy that the behavior of Mueller had worsened, and asked Troy to do something to fix it.

19. Troy reported Houfek's concerns to Bonin.

20. Bonin arranged for a meeting between Troy, Bonin, Chief Patrick Borer (hereinafter "Borer"), and retired Chief Rich Furasek (hereinafter "Furasek"). The meeting between Troy, Bonin, Borer, and Furasek took place on or around November 11, 2011.

21. Troy took over the recruit training class for two weeks in November with the assistance of Captain Greg Connolly (hereinafter "Connolly"). Troy taught the recruits emergency operations. He instructed them on driving a medic unit through a program Troy developed.

22. Mueller, in retaliation of Troy's earlier complaint, fabricated a report to Benes. In the report Mueller falsely accused Troy of sending obscene text message to Mueller's wife. In response to Mueller's accusation Troy volunteered his phone and all electronic devices in order to allow the Defendant to conduct an investigation.

23. In January 2012, Khalil was fired.

24. On January 17, 2012, Troy had a meeting with Bonin and Chief Jeanne Pashalek ("Pashalek"). Pashalek was the Human Resources Officer for Lincoln Fire and Rescue. Troy complained to Pashalek about retaliation he was subjected to following his complaints about the harassment of Khalil. Pashalek stated that she would investigate the harassment.

25. On January 29, 2012, Pashalek sent Troy a notice of a mediation meeting that would be held on the next day. Troy requested the meeting be moved to a time when his supervisor, Bonin, would be available.

26. The meeting was held on January 30, 2012, against Troy's objections to reschedule.

27. The January 30, 2012, meeting included Pashalek, Borer, Benes, Fletcher, Mueller, and Troy. Troy had previously complained about Benes, Fletcher, and Mueller. Borer was enlisted to mediate the meeting.

28. Pashalek stated in the meeting that she found no basis for Troy's claims during her investigation.

29. The meeting lasted approximately 1.5 hours. Troy felt throughout the meeting that his character was being personally attacked. After 1.5 hours Troy stated, "I am done with this meeting," apologized to everyone there, and was told to leave.

30. On February 28, 2012, Bonin gave Troy a letter of reprimand from Pashalek, disciplining Troy for leaving the January 30, 2012, meeting. The letter or reprimand was signed by Borer and Captain John Huff (hereinafter "Huff"). Pashalek stated in the letter that any investigation into Troy's complaint would be dropped because of his conduct in the meeting.

31. On March 2, 2012, Troy wrote a letter to be attached to his discipline report. The letter disputed the claims in the reprimand he received for leaving the January 30, 2012, meeting. Troy also contacted Pat Kant (hereinafter "Kant"), Director of City Personnel.

32. On March 2, 2012 Troy had a meeting with Dave Engler (hereinafter "Engler"), President of the Lincoln Firefighters Association, Kant, and Huff. This meeting was to discuss Troy's request to remove the reprimand for leaving the January 30, 2012 meeting from his record. Troy also attempted in the meeting to discuss his complaint regarding Khalil.

33. On March 9, 2012, Troy received a letter from Huff regarding the meeting on March 2, 2012, and Troy's reprimand from February 28, 2012. Huff stated that there were conflicting reports between Troy's account and reports of other firefighters. Huff told Troy he would not remove the reprimand from Troy's record.

34. In March of 2012, Bonin gave Troy permission to use vacation time to "clear his head." Troy took nine (9) vacation days between March 8th and March 27th. When Troy returned from vacation, Bonin told Troy he should not have gone on vacation and a training session was rescheduled because of him. Bonin told Troy his career may be on the line and to keep his mouth shut and do whatever is necessary to stay out of trouble.

35. In April of 2012, because of the discipline received for January 30, 2012 meeting and the comments made by Bonin, Troy requested to be removed from the training division.

36. In the summer of 2012, Troy completed the City of Lincoln workplace harassment form. The form was delivered to Kimberly Taylor-Riley (hereinafter "Taylor-Riley"), the City of Lincoln's Equal Employment Officer.

37. On or about July 20, 2012, Troy, Carl Campbell (hereinafter "Campbell"), Firefighter Sten Ulrich (hereinafter "Ulrich"), and Firefighter Jordan Picou (hereinafter "Picou"),

5

attempted to complete a hose test on Engine Number 11. The hose test consists of pulling off all the firefighter hoses and pressurizers to evaluate them for damage or other malfunctions.

38. Campbell, Ulrich, and Picou started to take the hoses off while Troy waited for a fax in the office related to the test. While Troy was waiting for the fax he could see his entire crew through a large window in the office. Campbell reported to Troy that he heard a loud, unusual sound from one of the engines when Campbell put it into gear. Campbell had never heard that noise before. Troy instructed Campbell to shut down the fire engine, and to call the mechanic shop immediately. Troy contacted a mechanic, Bob Poe (hereinafter "Poe"), to inspect the truck. Poe stated that there was no damage to the truck because it was shut off immediately per Troy's instructions. The truck had a damaged water light indicator, meaning there was no water in the pump.

39. Troy received a verbal reprimand from Borer on August 2, 2012 for the hose test. On August 7, 2012, Troy also received an Employee Incident Report (hereinafter "EIR"), a second form of discipline, from the same incident. Upon information and belief, there was no investigation into whether the truck was actually damaged, and no statements were taken from the other three members of the crew present during the incident

40. Several months prior to Troy's incident during the hose test, another firefighter left a cord tied to a fire apparatus and caused considerable damage to the apparatus when it moved. This firefighter never received any disciplinary action.

41. Troy filed an Equal Employment Opportunity Complaint on or about August 8, 2012 with the City of Lincoln. This complaint in addition to Troy's previous internal complaints regarding retaliation resulted in an investigation conducted by Taylor-Riley that lasted until December 17, 2014.

42. Troy filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission on September 5, 2012.

43. On June 24, 2013, Troy checked the seal on a medication, the seal was not tampered with, and there were no entries made in the log book from previous shifts. So the log book numbers should have remained the same, so he did not double check the seal tag number on the scheduled medication carried on a truck. The seal tag had been inappropriately changed by another employee and the employee that changed the number failed to note the change in the logbook. Troy and seven (7) other individuals incorrectly enter the tag number into the log book for seven (7) days before noticing the seal tag number change.

44. On July 24, 2013, Troy received a written reprimand for the June 24th log book error. The other seven (7) individuals involved in the incident only received verbal reprimands.

45. On July 24, 2013 Troy was told by Borer that a lot of the chiefs in the department had trust issues with Troy because of the EEOC State of Nebraska Complaint Troy made in 2012. Borer stated that this was why Troy was not considered for a promotion to EMS Supervisor.

46. On August 1, 2013, Borer told Troy he received more severe disciplinary action for the logbook error on July 24 2013, because he has a history in the department. Borer said that history included the complaint Troy made to the Nebraska EEOC. This conversation happened in front of Ulrich.

47. In March 2014, Troy noticed another firefighter paramedic had not performed the mandatory drug expirations. Troy assisted that firefighter in removing all expired drugs from the medic unit. After Troy's shift, he was informed the same firefighter wrote down the wrong log

7

book number. Troy called the EMS supervisor to correct the error. An investigation was then conducted.

48. Huff and Bonin ordered Troy to a discipline meeting because of the March 2014 logbook error. Huff and Bonin attempted to have Troy suspended because of the error. Troy presented his account of what happened, including evidence that there were multiple logbook errors by others who had not been disciplined. However, Troy received a written reprimand, and the subject firefighter did not receive any discipline.

49. After this discipline was issued, Troy was involuntarily transferred to B Shift from A Shift. Troy requested to be put back on the Acting Bataillon Chief promotions list for the opportunity of overtime and out of pay grade compensation, but his request was denied by Chief Huff. Huff claimed that Troy was not qualified even though he had been qualified previously and had been on the same list for the B-shift. If a firefighter is on the Bataillon Chief's list, they receive additional pay. Troy filed a grievance through the Union regarding this issue, and the City eventually compensated Troy for these missed pay opportunities.

50. On October 10, 2014, Taylor-Riley completed part of her report regarding her investigation into Troy's complaints of retaliation and forwarded the report to the City of Lincoln's mayor's office. The report only addressed the discipline Troy received because he walked out of the January meeting in 2012. Taylor-Riley requested that the reprimand be removed from Troy's personnel file. Taylor-Riley continued to investigate the other retaliation Troy experienced.

51. On November 3, 2014, the Mayor of Lincoln approved removing the disciplinary action from Troy's file and told Public Safety Director Tom Casady (hereinafter "Casady") to

create a plan to address the widespread and on-going retaliation occurring in the Lincoln Fire Department involving Troy.

52. Before November, 2014, the process for promotions to the position of Battalion Chief required 100 multiple choice questions and an interview conducted by three outside interviewers that were not fire administrative staff. No Lincoln Fire and Rescue members participated in ranking the candidates. In November, 2014, Paschalek changed how the promotion process worked, which required the input of several of the acting Chiefs.

53. Part of the promotions process consisted of an evaluation of each applicant's employment portfolio, experience, and education. The portfolio was ranked by Pashalek, Bonin, Borer, and retired Chief Darald Murrell (hereinafter "Murrell"). Troy received a low score on the portfolio rank.

54. Troy complained to Kimberly-Taylor Riley, as well as, Doug McDaniel, the City's Human Resources Director, that he did not feel the promotional process could be fair given that the subjects of his previous NEOC Charge and internal retaliation complaints would be evaluating him for promotion.

55. Before November, 2014, the six (6) candidates that scored the highest on the test were selected for interviews for Battalion Chief. If any of the top six candidates declined an interview or job offer for the position of Battalion Chief, the next person in rank was offered an interview.

56. Following the Battalion Chief Promotional Process in the fall of 2014, Troy was ranked seventh. At the time of the ranking there was no position available for Battalion Chief, and interviews were not conducted, but all seven candidates began attending Chief's meetings

and were available to work as Acting Bataillon Chief if the Chief officer was absent. Troy was not provided equal opportunity to serve as Acting Bataillon Chief on the B-shift.

57. On December 17, 2014, the investigation by Taylor-Riley was completed in its entirety.

58. As a result of Taylor-Riley's investigation Troy's reprimands from March 2012, August 2012, July 2012, and May 2014, were removed.

59. Upon information and belief as a result of the Taylor-Riley's findings, Casady was instructed to examine and potentially restructure the academy training model with the assistance of a task force; implement a mandatory training seminar regarding equal employment practices generally, and retaliation specifically, for all management-level employees; and receive the process of imposing discipline to ensure consistency.

60. Troy met with Casady on January 8, 2015 to discuss Taylor-Riley's report. Casady stated in the meeting that Taylor-Riley's report was a "shotgun approach report, and I'm not going to show any of the Chief Officers because they are just going to deny the allegations." Casady informed Troy that he was not going to discipline anyone based on the report. In the meeting, Troy stated that he was not satisfied with the action being taken. Even though Troy's complaints regarding retaliation were found to be substantiated, he was not provided the opportunity to be evaluated for Bataillon Chief by unbiased decision-makers.

61. On or about March 1, 2015, a backup EMS supervisor was injured and put on leave. Troy was qualified to fill in for the position of EMS Supervisor. The EMS supervisor is a higher paying position than Troy's position. Instead of allowing Troy to fill in as an EMS Supervisor on his own shift, Bonin scheduled other individuals from other shifts, which resulted in overtime chargeable to the City of Lincoln.

62. From the year of 2015, Troy was scheduled to work 608 medic unit hours, while other similarly situated captain/medics were assigned an average of 310 medic unit hours. Because of the inordinate amount of time Troy is scheduled as a medic, he has missed other opportunities to perform his other duties as Captain. The current medical director requires each Captain/medic to complete four 24-hour shifts each quarter for a minimum of no less than 384 hours each, or no less than 16 shifts, however, Troy has been required to work almost double the requirements and others have not.

63. In July of 2015, a Chief's position became available and interviews were conducted. The second and third-ranked candidates for the Battalion Chief position declined the offer for an interview. Past procedure for the Battalion Chief promotion was to invite the next ranked candidate to interview if an interviewed candidates decline the interview. Troy was the next ranked candidate, but he was not offered an interview for the position.

64. On or about August 13, 2015, the fourth ranked candidate was offered the position of Bataillon Chief.

65. On or about September 9, 2015, Troy filed his second charge of discrimination with the Nebraska Equal Opportunity Commission alleging retaliation by the Defendant's representatives. Along with other retaliatory allegations, Troy alleged the unequal treatment regarding assignments of medic hours within this Charge as element of the ongoing retaliation.

66. On or about October 22, 2015, Borer demanded a member of the Lincoln Fire and Rescue Staffing Administration write an email to Borer stating that Troy does not mind being assigned to medic unit and enjoys the medic unit. Borer requested similar statements from other firefighters. Those firefighters had not worked with Troy for several years. Troy never made the statement that he does not mind being assigned to a medic unit or enjoys it.

67. On or about November 30, 2015 Linke promoted another firefighter to Battalion Chief.

68. Retaliation against Troy continues to occur.

## COUNT I

## RETALIATION UNDER 42 U.S.C.A. §1983

69. Plaintiff repleads paragraph 1 to 68 of this Complaint as fully set forth herein.

70. Defendant City of Lincoln, Nebraska, through its agents, servants and employees, including Defendants Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes, in their official capacities, established an official policy, practice or custom of reckless or deliberate indifference to persons in Troy's position.

71. Defendant City of Lincoln, Nebraska discriminated and/or retaliated against Troy by establishing, maintaining and enforcing policies which create or foster a retaliatory hostile work environment, by retaliating against individuals that complain about sexual/national origin discrimination and illegal retaliation and/or refuse to countenance a discriminatory or retaliatory hostile work environment.

72. In the alternative, if the discriminatory practice of establishing, maintaining, and enforcing policies which create or foster a sexually hostile work environment, by treating people who complain about illegal discrimination differently and retaliating against those, including Troy, who complain about and/or refuse to countenance an illegal retaliatory hostile work environment was not a policy of the City of Lincoln, it was a practice, procedure or custom which the City of Lincoln and its policy makers, including Defendants Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes, had actual or constructive knowledge.

73. Plaintiff was subjected to this official policy or custom while he was employed by City of Lincoln.

74. Defendant City of Lincoln's policy, custom, or practice in general, and as applied to Troy in particular, was purposeful and intentional.

75. Defendant City of Lincoln deprived Plaintiff of his rights to which he is entitled under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, all in violation of 42 U.S.C. §1983.

76. Plaintiff has been damaged as a direct and proximate result of the Defendants' acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendants, City of Lincoln, Nebraska, Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes, in their official capacities, in an amount which will fully and fairly compensate him for his injuries and damages for attorney's fees, and costs for interest as allowed by law and for such other and further relief as is just in the premises.

## COUNT II
## EQUAL PROTECTION VIOLATION

77. Plaintiff realleges paragraphs 1 to 76 of this Complaint as if fully set forth herein.

78. Defendants Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by establishing, maintaining, or enforcing policies which create or foster an illegal retaliatory hostile work environment, by treating people who complain about illegal discrimination differently than other

similarly situated employees and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a hostile work environment based on sex/national origin or retaliation.

79. In the alternative, if the acts complained of were not committed by the individual Defendants pursuant to an official policy, practice or custom of the City of Lincoln, Nebraska they were committed by the individual Defendants with the purpose and intent of creating or fostering a retaliatory hostile work environment, by treating people who complain about illegal discrimination differently than other similarly situated employees and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a hostile work environment based on sex/national origin or retaliation.

80. Each individual Defendant acted under color of state law.

81. Each individual Defendant's conduct was a proximate cause of damages sustained by Plaintiff.

82. Each individual Defendant acted with reckless or deliberate indifference to the rights of Plaintiff and with malice.

83. Plaintiff has been damaged as a direct and proximate result of the individual Defendants' acts and omissions aforesaid.

WHEREFORE Plaintiff prays for judgment against Defendants Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes, in their individual capacities, in an amount which will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish Defendants and deter others, for attorney's fees and costs, for interest as allowed by law and for such other and further relief as is just in the premises.

## COUNT III

### CONSPIRACY UNDER SECTION 1983

84. Plaintiff repleads paragraph 1 to 83 as if fully set forth herein.

85. Defendants Tom Casady, John Huff, Pat Borer, Roger Bonin, Jeanne Pashalek, and Leo Benes, in their individual capacities conspired with others to deprive Plaintiff of his Constitutional rights

86. That at least one of the defendants engaged in an overt act in furtherance of the conspiracy.

87. As a result of Defendants' acts and omissions, Troy has in the past and will in the future suffer damages including but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages; benefits; future earning; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the cost of this action, and for such other relief as may be just in the circumstances.

## COUNT IV

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

88. Plaintiff repleads paragraph 1 to 87 as if fully set forth herein.

89. Troy complained to Defendant about the sexual harassment and harassment based on national origin he witnessed and otherwise opposed practices made unlawful by the Title VII of the Civil Rights Act of 1964, as Amended.

90. Troy's complaint was a protected activity within the meaning of the Title VII of the Civil Rights Act of 1964, as Amended.

91. Defendant City of Lincoln's actions towards Troy constitute retaliation within the meaning of the Civil Rights of 1964.

92. Troy's protected activity was a motivating factor in Defendants' retaliation against him.

93. As a result of Defendants' acts and omissions, Troy has in the past and will in the future suffer damages including but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages; benefits; future earning; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for interest as allowed by law, for attorney's fees, for the cost of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Title VII of the Civil Rights Act of 1964, as Amended.

## COUNT V

## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICES ACT

94. Plaintiff repleads paragraph 1 to 93 as if fully set forth herein.

95. Troy complained to defendant City of Lincoln about the sexual harassment and harassment based on national origin he witnessed and otherwise opposed practices made unlawful by the Nebraska Fair Employment Practices Act.

96. Defendant City of Lincoln retaliated against Troy because of his complaints and opposition to the harassment and retaliation.

97. Troy's protected activity was a motivating factor in Defendant City of Lincoln's retaliation against him.

WHEREFORE, Plaintiff Troy Hurd demands judgment against Defendant City of Lincoln, in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for prejudgment and post-judgment interest, for attorneys' fees, for the costs and expenses of this action, for equitable relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Nebraska Fair Employment Practices Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury.

Dated this 30th day of June, 2016.

                                              TROY HURD, Plaintiff

                            By     /s/Kelly K. Brandon_____
                                       Kelly K. Brandon, #20734
                                       Fiedler & Timmer, P.L.L.C
                                       20615 Highway 370
                                       Gretna, NE  68028
                                       402-316-3060
                                       402-513-6501 (F)
                                       kelly@employmentlawnebraska.com
                                       Attorney of the Plaintiff