# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TROY M. HURD,<br><br>                    Plaintiff,<br><br>    vs.<br><br>THE CITY OF LINCOLN, a political subdivision;<br><br>                    Defendant. | 4:16CV3029<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for New Trial or Judgment as a Matter of Law, ECF No. 255, filed by Defendant City of Lincoln, and the Motion for Equitable Relief/Front Pay, ECF No. 268, filed by Plaintiff Troy Hurd. Also before the Court are the Motion for Leave to Depose Jurors or for an Evidentiary Hearing, ECF No. 284, filed by the City; and the Motions to Strike, ECF Nos. 279 & 286, filed by Hurd. For the reasons stated below, the Motion for New Trial or Judgment as a Matter of Law will be granted, in part, and the Motion for Equitable Relief/Front Pay will be granted, in part. The other Motions will be denied.

## BACKGROUND

Ruling on the City's motion for summary judgment, Judge Kopf concluded that Hurd could proceed to trial on his claims for retaliatory hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1114. Mem. and Order, ECF No. 136, Page ID 3879-80. On November 29, 2018, the case was reassigned to the undersigned and tried to a jury on February 5, 2019. ECF No. 179. The case was submitted to the

jury on February 15, 2019, and the jury returned a verdict in favor of Hurd in the amount of $1,177,815.43. Verdict Form, ECF No. 245, Page ID 4944; Judgment, ECF No. 250.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 50(b) provides that "[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law."

*Id.* "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1).

"Rule 50(b) provides for post-trial renewal of a Rule 50(a) trial motion for judgment as a matter of law," and "[a] court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015) (citing *Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 617-18 (8th Cir. 2014)). "Judgment as a matter of law is warranted only when no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, could find against the movant." *Estate of Snyder v. Julian*, 789 F.3d 883, 887 (8th Cir. 2015) (citing *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 986 (8th Cir. 2010); *Townsend v. Bayer Corp.*, 774 F.3d 446, 456 (8th Cir. 2014) ("A grant of [judgment as a matter of law] is proper only if the evidence viewed [favorably to the

prevailing party at trial] would not permit reasonable jurors to differ as to the conclusions that could be drawn."). "In deciding whether to grant judgment as a matter of law, [courts] may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." *S. Wine and Spirits of Nev. v. Mountain Valley Spring Co., LLC*, 646 F.3d 526, 533 (8th Cir. 2011) (citing *Schooley v. Orkin Extermination Co.*, 502 F.3d 759, 764 (8th Cir. 2007)); *see also Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017).

"A new trial may be granted on all or some issues 'after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.'" *Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 414 (8th Cir. 2016) (quoting Fed. R. Civ. P. 59(a)(1)(A)). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996); *see also Trickey v. Kaman Insus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013). "With respect to legal errors, a 'miscarriage of justice' does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error." *Trickey*, 705 F.3d at 807 (citing *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997)).

## DISCUSSION

### I. Judgment as a Matter of Law

After Hurd presented his evidence, the City moved for judgment as a matter of law under Rule 50(a), arguing Hurd failed to present enough evidence upon which a reasonable jury could find in his favor. Trial Tr., ECF No. 273, Page ID 5468-69. The

City renewed the motion following its presentation of evidence. Trial Tr., ECF No. 274, Page ID 5472. The Court denied the motion, and the jury returned a verdict for Hurd. ECF No. 245. Following trial, the City renewed its motion under Rule 50(b). Def.'s Mot., ECF No. 255. Specifically, the City argues Hurd presented insufficient evidence to establish any of the elements of a claim for retaliation under Title VII or the NFEPA. Trial Tr., ECF No. 273, Page ID 5468-69.

To succeed on his retaliation claim under Title VII or the NFEPA, Hurd had to establish (1) he engaged in protected conduct, (2) he suffered a materially adverse employment action, and (3) there was a causal connection between his protected activity and the adverse action. *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017) (Title VII); *O'Brien v. Bellevue Pub. Sch.*, 856 N.W.2d 731, 741 (Neb. 2014) (NFEPA). Although the prima facie elements are the same under Title VII and the NFEPA, the parties agreed that the causal-connection standards for these claims differ. *Compare Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action."), *with Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 802-03 (8th Cir. 2015) (affirming district court's "motivating-factor instruction" in NFEPA retaliation case).

The City's briefing enumerates several bases for its Rule 50(b) motion, including erroneous evidentiary rulings, juror misconduct, and excessive damages. The City did not, however, separately address or demonstrate that, based on the evidence admitted at trial, the jury lacked "a legally sufficient evidentiary basis" to find in favor of Hurd on

4

either of his retaliation claims. *Bavlsik*, 870 F.3d at 805. The City has, therefore, not shown that it is entitled to judgment as a matter of law in its favor notwithstanding the jury's verdict, and the Court finds there was sufficient evidence for a reasonable jury to find the City liable for retaliation under Title VII and the NFEPA.

The Court will also deny the City's request for judgment as a matter of law on the issue of damages for lost wages because the City's pre-verdict motion for judgment as a matter of law did not request judgment on the amount of lost wages—or any other category of damages. Nor did the City object to submission of lost wages to the jury. Def.'s Objs., ECF No. 218; Trial Tr., ECF No. 251, Page ID 5045-50; *Hyundai Motor Fin. Co. v. McKay Motors I, LLC*, 574 F.3d 637, 642 (8th Cir. 2009); *see Hudson v. United Sys. of Ark., Inc.*, 709 F.3d 700, 705 (8th Cir. 2013). The Court finds there was sufficient evidence for a reasonable jury to award Hurd $44,624.89 for lost wages and fringe benefits associated with the City's failure to consider appointing him to a backup EMS supervisor position.

## II. New Trial/Remittitur

Alternatively, the City seeks a new trial on liability based on allegedly erroneous evidentiary rulings; a new trial on future emotional distress damages based on juror misconduct; and a new trial or remittitur on the amounts awarded for lost wages and emotional distress damages.

### a. Evidentiary Rulings

"An allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." *Burris*

5

*v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir. 2015) (quoting *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 833 (8th Cir. 2005)).

The City argues (1) evidence of alleged adverse actions that occurred prior to November 15, 2014, should have been excluded as time barred; (2) evidence that Hurd was not considered for the EMS backup supervisor position and that he was prohibited from "riding out of grade" as a battalion chief should have been excluded because Hurd did not specifically allege these adverse actions in his administrative charges; (3) Hurd's criminal conviction and resulting written reprimand should have been admitted to show his divorce was not caused by his employment issues; (4) Hurd's unredacted medical records should have been admitted to show his divorce was not caused by his employment issues; (5) Kimberley Taylor Riley's redacted investigative report should have been excluded; (6) Sara Khalil should have been precluded from testifying about her preceptorship because it involved issues Hurd did not raise with the City's equal employment officer; and (7) the administrative determinations on Hurd's first and second charges should have been admitted. Def.'s Mot., ECF No. 255.

For the reasons stated on the record during trial, the Court reaffirms its evidentiary rulings on the foregoing issues. Further, the Court is not persuaded that a new trial would likely produce a different result if these evidentiary objections were resolved in the City's favor. To succeed on his retaliation claims, Hurd was required to show that the City's actions might have dissuaded a reasonable worker from reporting an unlawful practice, and, under Nebraska law, he was required to show only that his statutorily protected activity was a motivating factor in the City's decision to take those actions. *AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014); *Knapp v. Ruser*, 901 N.W.2d 31, 48 (Neb.

6

2017) (quoting *id.*); *Ludlow*, 788 F.3d at 802-03. If all the evidentiary issues enumerated above had been resolved in the City's favor, the Court cannot conclude that a jury likely would have found for the City, because Hurd presented other evidence to establish a prima facie case of retaliation.

Therefore, the Court will not grant the City a new trial on the issue of liability for allegedly erroneous evidentiary rulings.

### b. Juror Misconduct

In civil cases, exposure of the jury to extrinsic or extraneous influences, such as "matters considered by the jury but not admitted into evidence," requires "a new trial only upon a showing that materials are prejudicial to the unsuccessful party." *Hiser v. XTO Energy, Inc.*, 768 F.3d 773, 776-77 (8th Cir. 2014) (internal quotations omitted). In determining whether the jury was improperly influenced, the Court "must consider relevant testimony and other evidence as to what occurred to determine 'whether there is a reasonable possibility that the [materials] altered the jury's verdict[.]'" *Id.* (quoting *Anderson v. Ford Motor Co.*, 186 F.3d 918, 920 (8th Cir. 1999)).

Although "[a] juror may testify about whether extraneous prejudicial information was improperly brought to the jury's attention[,]" *id.* (quoting Fed. R. Evid. 606(b)(2)(A)), a juror "may not testify (including by affidavit) 'about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . . [,]'" *id.* (quoting Fed. R. Evid. 606(b)(1)). Ultimately, district courts have "broad discretion in handling allegations of juror misconduct . . . ." *Id.* (quoting *United States v. Williams*, 97 F.3d 240,

246 (8th Cir. 1996)); *see also United States v. Muhammad*, 819 F.3d 1056, 1061-62 (8th Cir. 2016); *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009).

Based on its post-trial questioning of multiple jurors, the City argues it is entitled to a new trial on damages because, while on a weekend recess from deliberations, one juror created a spreadsheet on his laptop to calculate future emotional distress damages. Leasure Aff., ECF No. 256-1. When deliberations resumed, the juror brought printed copies of the spreadsheet and his laptop into deliberations. *Id.* Forty-five days after judgment was entered, and twenty-four days after filing its Rule 50(b) Motion, the City filed a Motion for Leave to Depose Jurors or for an Evidentiary Hearing, ECF No. 284.

In accordance with the Eighth Circuit's Model Civil Jury Instructions, the Court instructed the jury: "Do not do any research—on the Internet, in libraries, newspapers, or otherwise, and do not investigate this case on your own." 8th Cir. Civil Jury Instr. § 1.08 (2018). The Court also instructed the jury that its decision had to be based only on the evidence presented during trial, Final Jury Instruction Nos. 21 & 22, ECF No. 249, Page ID 5036-37, and "[i]t is certainly reasonable to believe, absent evidence to the contrary, that the jury adhered to the judge's instructions[,]" *Hiser*, 768 F.3d at 777 (quoting *Yannacopoulos v. Gen Dynamics Corp.*, 75 F.3d 1298, 1305 (8th Cir. 1996)). *See also* Answer to Jury Question, ECF No. 243, Page ID 4940 ("You must base your decision on the evidence in the record.").

The City's affidavit shows that a juror created a spreadsheet to organize the trial evidence and to help calculate future emotional distress damages, but it does not show that the spreadsheet included any outside material or that the jury disregarded the Court's instructions to consider only the trial evidence. *See* Leasure Aff., ECF No. 256-1. In

8

*Poppe v. Siefker*, the Nebraska Supreme Court considered whether the jury's use of a "personal financial slide calculator" required a new trial. 735 N.W.2d 784, 789-92 (Neb. 2007). The Court explained that it did not "condone the presence of these nonevidentiary items in the jury deliberation room without the knowledge of the court" but concluded that the slide calculator was, ultimately, "nothing more than a device which allowed the user to perform mathematic calculations quickly and easily." *Id.* at 791. Similarly, this Court does not condone the juror's decision to create a spreadsheet at home for use in the deliberation room, but the Court does not find that the City was prejudiced by extraneous evidence. Rather, it appears from the City's affidavit that the spreadsheet was used as a tool to organize the trial evidence and perform mathematic calculations.

The City requests leave to depose the jurors or an in-court evidentiary hearing to determine whether the spreadsheet used or incorporated impermissible outside material, such as a mathematic formula or internet resource. The City's affidavit, however, does not "raise a colorable claim of [such an] outside influence." *Muhammad*, 819 F.3d at 1062 (quoting *United States v. Wintermute*, 443 F.3d 993, 1002 (8th Cir. 2006)); *see also United States v. Moses*, 15 F.3d 774, 778 (8th Cir. 1994) ("Not every allegation of outside influence requires an evidentiary hearing."); *see Hiser*, 768 F.3d at 778-79 (affirming district court's refusal to subpoena a juror to testify on allegations of juror misconduct). The City only speculates that the juror who created the spreadsheet incorporated outside material that prejudiced the City.

Therefore, the Court will deny the City's Motion for Leave to Depose Jurors or for an Evidentiary Hearing and its request for a new trial on the issue of future emotional distress damages based on juror misconduct.

c. **Excessive Emotional Distress Damages**

"[T]he inadequateness or excessiveness of a jury award will be reviewed 'only in those rare situations in which there is a plain injustice or a monstrous or shocking result.'" *See, e.g.*, *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 391 (8th Cir. 2016) (citing *Sterling v. Forney*, 813 F.2d 191, 192 (8th Cir. 1987)). The Court will "not order a new trial or remittitur merely because [it] may have arrived at a different amount from the jury's award." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013); *see also Eich v. Bd. of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 763 (8th Cir. 2003) ("A verdict is not considered excessive unless there is plain injustice or a monstrous or shocking result.") (internal quotations omitted). If the district court finds that an emotional distress award is excessive, it may give the plaintiff the option of accepting a remittitur or a new trial on the issue of emotional distress damages. *Townsend*, 774 F.3d at 467.

"In general, 'awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms.'" *Townsend*, 774 F.3d at 466 (quoting *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000)). "Such an award must be 'supported by competent evidence of genuine injury,' but medical or other expert evidence is not required." *Bennett*, 721 F.3d at 552 (quoting *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) and citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997)).

The jury found in favor of Hurd on his retaliation claims under Title VII and the NFEPA and awarded him $166,500.00 for past emotional distress and $930,472.12 for

10

future emotional distress.[1]  Rather than employ a damage comparison approach,[2] the Court will evaluate the jury's award based on the trial evidence.  *See generally McCabe v. Parker*, 608 F.3d 1068, 1080-81 (8th Cir. 2010) (explaining the damage comparison approach and finding that the district court's decision to employ it was not an abuse of discretion).

Hurd continues to work for the City as a fireman, and he suffered no financial hardship.  Over the course of roughly seven years, he suffered from "anxiety, crying outbursts, depression, insomnia, loss of energy, loss of self-confidence, and weight gain." Pl.'s Br., ECF No. 277, Page ID 5524 (identifying the evidence of emotional distress presented to the jury).  Hurd and his mother testified that he always wanted to be a fireman, and Hurd testified that he considered his career with the City effectively over.  Hurd's expert witness, Dr. Tellefsen, testified about her evaluation of Hurd's mental health and concluded that his prognosis was poor.

Based on this evidence, it is neither shocking nor plainly unjust that the jury awarded Hurd a substantial amount for past and future emotional distress.  It is, however, shocking that the jury awarded $930,472.12 for future emotional distress, because the

---

[1] 42 U.S.C. § 1981a(b)(3) limits the amount of future emotional distress damages that Hurd may recover for retaliation under Title VII, but the NFEPA does not limit this category of damages, Neb. Rev. Stat. § 48-1101 *et seq*.

[2] Neither party undertook the fact-specific analysis required for the Court to determine whether the jury's "verdict falls within the range established by previous awards" in factually similar cases.  *McCabe*, 608 F.3d at 1081 (internal quotation omitted).  The Eighth Circuit has "observed that . . . a district court may even abuse its discretion by relying on such comparisons where the facts of the instant case 'are not easily comparable to the facts of other cases.'"  *Gonzalez v. United States*, 681 F.3d 949, 953 (8th Cir. 2012) (quoting *McCabe*, 608 F.3d at 1080).  Thus, the Court will not take this approach where the parties have not provided an adequate basis for, or demonstrated the propriety of, doing so.  Moreover, Hurd urges the Court to judge the jury's verdict based on the evidence presented to the jury, and cites *McCabe* for the proposition that "a damage comparison approach is often not helpful in claims involving noneconomic damages[.]"  608 F.3d at 1080.

jury was not presented with any evidence of extraordinary circumstances that would merit such a large amount. *See Townsend*, 774 F.3d at 467 (finding remittitur appropriate where the plaintiff's "garden-variety evidence of emotional distress did not present the extraordinary circumstances which would have justified an award" in the amount of $568,000) (citing *Rowe v. Hussmann Corp.*, 381 F.3d 775, 783-84 (8th Cir. 2004)). It is also not apparent how the jury arrived at this specific amount or why the jury's award for future emotional distress was so much greater than its award for past emotional distress. As such, the Court finds that the jury's award for future emotional distress is not supported by the trial evidence and is shockingly excessive. *Id.*; *see also Wendeln v. The Beatrice Manor, Inc.*, 712 N.W.2d 226, 243-44 (Neb. 2006) (evaluating whether the jury's award for mental suffering was supported by the evidence in a retaliatory discharge case); *see also Bedore v. Ranch Oil Co.*, 805 N.W.2d 68, 86 (Neb. 2011) ("An award of damages may be set aside as excessive" when it is so excessive "as to be the result of passion, prejudice, mistake, or some other means not apparent on the record.").

Having found the jury's future emotional distress award excessive, remittitur is appropriate,[3] and the Court must determine the maximum amount the jury could have reasonably awarded. *Wright v. Byron Fin., LLC*, 877 F.3d 369, 374 (8th Cir. 2017) ("If remittitur is justified, the issue becomes whether it comports with the maximum recovery rule[.]") (quoting *McCabe v. Parker*, 608 F.3d 1068, 1081 (8th Cir. 2010)). In making this

---

[3] The Court does not find that the jury's verdict was motivated by passion or prejudice. *See generally Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1110 (8th Cir. 2014) ("We favor new trials over remittiturs when a court finds that passion or prejudice has influenced a jury's damage award on the theory that such passion or prejudice may also have influenced the jury's determinations in other phases of the trial.") (citing *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005)).

determination, the Court must continue to "assess the evidence in the light most favorable to the jury's award, drawing all reasonable inferences in support of [it]." *Id.* (alteration in original) (quoting *Climent-Garcia v. Autoridad de Transporte Maritimo y Las Islas Municipio*, 754 F.3d 17, 21 (1st Cir. 2014)).

Considering all the evidence presented to the jury and viewing it in Hurd's favor, the Court finds that, in addition to the $166,500 awarded for past emotional distress, an award in the amount of $300,000 for future emotional distress is justified, but not more. Accordingly, Hurd may accept remittitur of $300,000 for future emotional distress damages or a new trial on that issue.

### d. Lost Wages

To the extent the City argues that the jury's award of $44,624.89 for lost wages was against the weight of the evidence, the Court does not find that this award amounts to a miscarriage of justice. Hurd introduced documents and testified regarding the wages and benefits he lost because of the City's failure to consider appointing him to a backup EMS supervisor position. In light of this evidence, the Court cannot conclude that the jury's award for lost wages and fringe benefits was shocking or unjust, and it will deny the City's request for a new trial or remittitur on this portion of the jury's verdict.

## III. Equitable Relief

In addition to the awarded compensatory damages, Hurd seeks equitable relief under 42 U.S.C. § 2000e-5(g). Specifically, Hurd requests that the Court order the City to (1) promote him to the position of battalion chief or provide him front pay for the EMS supervisor position for a period of ten years; (2) provide him future sick leave hours; (3) cease and desist any acts of retaliation against its employees; (5) amend certain policies

to inform employees that civil rights complaints, lawsuits, and related conduct are protected activities under the law; (6) require all Fire and Rescue supervisors to attend harassment, discrimination, and retaliation training; (7) post copies of a written notice drafted by Hurd's counsel. Pl.'s Mot., ECF No. 268, Page ID 5373-75. Hurd's Motion also seeks post-judgment interest. *Id.* at Page ID 5374.

Section 2000e-5(g)(1) provides in pertinent part that

> [i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, . . . or any other equitable relief as the court deems appropriate.

Title VII is intended to make the victim of an unlawful employment practice whole, and "courts have wide discretion to fashion the most complete relief possible[.]" *Wedow v. City of Kansas City*, 442 F.3d 661, 676 (8th Cir. 2006) (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 (1976)).

a. **Promotion to Battalion Chief or Front Pay for EMS Supervisor Position**

Hurd argues that the jury found in his favor on his allegations that the City retaliated against him by failing to promote him to battalion chief and by failing to consider appointing him to a backup EMS supervisor position. According to him, the Court should therefore order the City to promote him to battalion chief or to provide him front pay at the rate of an EMS supervisor for a period of ten years. *Locke v. K.C. Power and Light Co.*, 660 F.2d 359, 368 (8th Cir. 1981) (stating courts "can in appropriate circumstances order a promotion"); *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782 (8th Cir. 2001) (stating front pay is an alternative remedy).

14

The Court will deny this form of relief because the jury did not find that the City retaliated against Hurd by denying him these positions, specifically. In his summary judgment order, Judge Kopf ruled that "[r]emaining for disposition in this action are [Hurd's] claims under Title VII and the [NFEPA] . . . against . . . the City of Lincoln[ ] alleging the City retaliated against him by creating and perpetuating a hostile work environment because [Hurd] complained about the City's sexual and national-origin harassment of a fellow employee and because [Hurd] filed charges with the NEOC/EEOC."[4] Mem. and Order, ECF No. 136, Page ID 3880-81; *see generally Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007) ("[R]etaliation claims under Title VII [can] be based on a hostile work environment and need not be based solely on discrete adverse employment actions . . . ."). Accordingly, the Court allowed Hurd to present evidence of the City's adverse actions over the course of several years, but the jury was not instructed to determine whether any particular action, including the City's failure to promote Hurd to battalion chief and to consider him for a backup EMS supervisor position, was caused by retaliatory animus. Jury Instruction No. 12, ECF No. 249, Page ID 5027; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 113 (2002) (Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim."); *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1083-84 (8th Cir. 2010) (stating "it is proper to consider the cumulative effect of an employer's alleged retaliatory

---

[4] Judge Kopf also noted that "any of Hurd's claims that are based on events occurring before April 30, 2013, are time-barred[,]" but that "this makes little difference as a practical matter because incidents occurring before April 30, 2013, may be considered as part of the alleged hostile work environment[.]" Mem. and Order, ECF No. 136, Page ID 3828. The City refused a limiting instruction in Jury Instruction No. 12 instructing the jury that adverse actions occurring before April 30, 2013, may not, independently, constitute a materially adverse action. The City did not object to Instruction No. 12.

conduct"). Therefore, it is unclear whether the jury found that Hurd was the most qualified candidate for those positions and wrongfully denied them.

Although the jury awarded Hurd lost wages associated with the City's failure to appoint him to a *backup* EMS supervisor position, it is unclear whether the jury found that Hurd was the most qualified candidate for a permanent EMS supervisor position and was wrongfully denied it. Thus, the Court will not order the City to promote Hurd to battalion chief nor will it order the City to provide Hurd front pay at the rate of an EMS supervisor.

b. **Future Sick Leave and Various Forms of Injunctive Relief**

Where a successful Title VII plaintiff seeks injunctive relief, "the court must balance three factors to determine if injunctive relief is appropriate: (1) the threat of irreparable harm to the moving party, (2) the harm to be suffered by the nonmoving party if the court grants the injunction, and (3) the public interest at stake." *Wedow*, 442 F.3d at 676 (citing *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998)). Given the scope of these factors and the objectives of § 2000e-5(g)(1), the Court will not grant any equitable relief for the purpose of punishing the City. *See id.* (citing *Franks*, 424 U.S. at 764) (explaining that to effectuate Title VII's "make whole objective, Congress . . . vested broad equitable discretion in the federal courts to order" appropriate "affirmative action" or "equitable relief").

Hurd provided no controlling precedent for granting future sick leave hours or for any of the various forms of injunctive relief he requests. Nor has he clearly identified a future threat of irreparable harm absent injunctive relief; he only speculates that the Lincoln Fire and Rescue Department will continue to unlawfully retaliate against its employees, and he argues that the various forms of equitable relief are justified on

16

punitive grounds.[5]  Pl.'s Br., ECF No. 288, Page ID 5638 (urging the Court to "utilize its equitable powers to impress upon the City that its actions have been illegal and unacceptable."); *see also id.* at Page ID 5639 (concluding that the City's conduct "warrants a strong message from th[e] Court"). Thus, the Court will deny these forms of relief because they are not needed to address a threat of irreparable harm or to make him whole. Nor are they sought for those purposes. *Id.* (citing the City's "unrepentant attitude" as the justification for injunctive relief).

### c. Post-Judgment Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Thus, "[p]ostjudgment interest is mandatory under 28 U.S.C. § 1961 . . . and should therefore be awarded." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 735 F.3d 993, 1007 (8th Cir. 2013) (quoting *Hillside Enters. V. Carlisle Corp.*, 69 F.3d 1410, 1416 (8th Cir. 1995)); *see also id.* (citing *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993) (stating "post-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it")). Interest is calculated from the date of the entry of the judgment. 28 U.S.C. § 1961(a); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).

Hurd is entitled to post-judgment interest at the rate provided by § 1961, and such interest began to accrue from February 26, 2019, the day the Court entered judgment. Judgment, ECF No. 250. That the Court found the future-emotional-distress portion of the jury's award to be excessive and will give Hurd the option of remittitur or a new trial

---

[5] Hurd did not seek punitive damages from the jury.

does not change the date from which interest began to accrue. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 261-62 (8th Cir. 1991) (distinguishing *Bonjorno*, 494 U.S. 827, and concluding that because the original judgment ascertained the plaintiff's damages "at least in part," the "district court properly awarded postjudgment interest from the date of the entry of the original judgment"); *see generally Jenkins v. Missouri*, 931 F.2d 1273, 1275-77 (8th Cir. 1991) (addressing post-judgment interest on attorney fees).[6]

## CONCLUSION

The Court finds the jury's damage award in the amount of $930,472.12 for future emotional distress is shocking and excessive, and Hurd must choose to accept remittitur of $300,000 or a new trial on the issue of future emotional distress damages by filing a notice with the Court on or before May 10, 2019.

Hurd's request for equitable relief is denied, but he is, as a matter of law, entitled to post-judgment interest under 28 U.S.C. § 1961 as set forth above. Accordingly,

IT IS ORDERED:

1. The Motion for New Trial or Judgment as a Matter of Law, ECF No. 255, filed by Defendant City of Lincoln, is granted, in part, as follows:

    Plaintiff Troy Hurd must choose between remittitur in the amount of $300,000 for future emotional distress damages or a new trial on that issue by filing a notice with the Court on or before May 10, 2019;

    The Motion is otherwise denied;

---

[6] To clarify, Hurd is not entitled to post-judgment interest on the $930,472.12 awarded for future emotional distress but on either the remitted amount of $300,000 or the amount awarded after a new trial on future emotional distress damages. Interest on either amount will be calculated from the entry of judgment on February 26, 2019. The City did not address these issues in its opposition brief and "simply request[ed] that any post-judgment interest be awarded within the statutory guidelines . . . ." ECF No. 282, Page ID 5589.

2. The Motion for Equitable Relief/Front Pay, ECF No. 268, is granted, in part, as follows:

> Plaintiff Troy Hurd is entitled to post-judgment interest at the rate provided by 28 U.S.C. § 1961 and in accordance with this Memorandum and Order;

The Motion is otherwise denied;

3. The Motion to Strike Index, ECF No. 279, filed by Plaintiff Troy Hurd is denied as moot;

4. The Motion for Leave to Depose Jurors or for an Evidentiary Hearing, ECF No. 284, filed by Defendant City of Lincoln, is denied; and

5. The Motion to Strike the Motion for Leave to Depose Jurors or for an Evidentiary Hearing, ECF No. 286, filed by Plaintiff Troy Hurd, is denied as moot.

Dated this 2nd day of May, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge