## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TROY M. HURD, | ) | Case No. 4:16-cv-03029 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT CITY OF LINCOLN'S** |
| | ) | **BRIEF IN OPPOSITION TO** |
| THE CITY OF LINCOLN, a political | ) | **PLAINTIFF'S MOTION FOR** |
| subdivision, | ) | **ATTORNEY FEES AND EXPENSES** |
| | ) | |
| Defendant. | ) | |

Defendant City of Lincoln ("City"), pursuant to Fed. R. Civ. P. 54(d)(2) and NECivR 7.1(b), 54.3, and 54.4, offers this brief in opposition to Plaintiff's Motion for Attorney Fees and Expenses (Doc. #252) and Plaintiff's First Supplemental Motion for Attorney Fees and Expenses (Doc. #298) by Plaintiff Troy Hurd ("Plaintiff").

## I.      Standard for Attorney's Fees.

The Eighth Circuit case of *El-Tabech v. Clarke,* 616 F.3d 834, 843 (8th Cir. 2010) (internal citations omitted) states that in "determining whether a fee award is reasonable and necessary, the key component is the exclusion of hours that are excessive, redundant, or otherwise unnecessary. The degree of plaintiff's success is 'the most critical factor' in selecting a reasonable fee award." "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. The amount of an attorney's fee is determined on the facts of each case, with the district court having wide discretion in making its determination. *Safelite Grp., Inc. v. Rothman,* No. 17-2974, 2019 U.S. App. LEXIS 1531, at *5 (8th Cir. Jan. 17, 2019).

NECivR 54.3(b) states that a "party applying for attorney's fees and related nontaxable expenses must support the application with appropriate and reliable evidence and authority, including affidavits and any written argument." The counsel making the application has the burden to establish the factual and evidentiary basis to support the award of attorney's fees and expenses.

*Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996). This Court's local rule NECivR 54.4(a)(1) requires attorneys seeking fees to "identify with particularity to work done" and, if a paralegal or law student performed any services, the movant must "state the salary or other wage rate at which the…law firm pays the paralegal or law student." NECivR 54(a)(3).

## II.    Degree of Success.

Plaintiff's Amended Complaint prays for attorneys' fees for each of his five claims. (Doc. #18). Only two of the five claims proceeded to jury trial; the other three claims for retaliation and conspiracy under 42 U.S.C. § 1983 and an equal protection violation alleged in Plaintiff's Amended Complaint (Doc. #18, at CM/ECF p. 12-15) (Counts I-III) were dismissed with prejudice when Defendants' Motion for Summary Judgment was partially granted on July 23, 2018 (Doc. #136, at CM/ECF p. 53). Further, all of the individual defendants were dismissed from the lawsuit and were entitled to qualified immunity under Counts II and III. (Doc. #136, at CM/ECF p. 42, 45). Trial was held on the two remaining claims on February 5-15, 2019, and the jury entered its verdict in favor of Plaintiff on February 19, 2019 (Doc. #246). City does not deny Plaintiff was the prevailing party at trial; however, several of the fees requested by Plaintiff are duplicative, excessive, or not merited.

In the 2019 case of *Safelite,* 2019 U.S. App. LEXIS 1531, at *5, the district court stated that "[r]ather than identify and then eliminate the hours spent on non-compensable claims, the court simply reduce[d] the award to account for the plaintiff's limited success." (quotation removed) (citing *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991)). "When a plaintiff obtains overall, but not complete, relief, '[t]here is no precise rule or formula' for an appropriate award." *Id.,* quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-36, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

"[T]he lodestar must be reduced if success is partial. Partial success refers to the failure to win on all claims when the claims and relief are separate. In such a case, a fee is not awarded for work on the unsuccessful claims; that is, all hours attributed to the discrete claim are disregarded." *ACLU Neb. Found. v. City of Plattsmouth*, 199 F. Supp. 2d 964, 967 (D. Neb. 2002) (quotation and citation omitted).

### A. Fees for post-verdict work should be reduced or denied entirely.

Plaintiff is not entitled to attorney fees generated responding to City's post-verdict motion for Judgment as a Matter of Law/Motion for a New Trail (Doc. #255) (and associated motions at Doc. #279, 284, 286, 296), because Plaintiff was not the prevailing party as the Court ruled in favor of the City on that motion (Doc. #294). Plaintiff likewise should not be awarded attorney's fees for work performed on Plaintiff's motion for equitable relief (Doc. #268) as the Court largely denied that motion (Doc. #294). A summary of Plaintiff's post-verdict billing on issues where Plaintiff was not the prevailing party is attached as Exhibit No. 7 to the Index of Evidence in support of this brief. (Doc. #301-7). The total $38,813.50 requested by Plaintiff for that activity should be denied entirely.

### B. Work related to Plaintiff's claims for Equal Protection and § 1983 should be denied.

Plaintiff's claims under 42 U.S.C. § 1983 and for an equal protection violation were dismissed with prejudice when Defendants' Motion for Summary Judgment was partially granted on July 23, 2018 (Doc. #136, at CM/ECF p. 53). Any attorney's fees related to those unsuccessful claims, in the total amount of $10,960.00 should be disallowed. (Doc. #301-8).

### III. Fiedler's excessive hourly rate should be reduced.

City also objects to the billable rate of $475 requested by Plaintiff for Paige Fielder. Fiedler is an Iowa attorney, who was admitted to practice pro hac vice in this Nebraska case, although this did not occur until October 5, 2017, right before depositions were scheduled and more than 18

months after the case was filed. (Doc. #1); (Doc. #56). Fielder's rate of $475 is excessive to local market rates charged by Nebraska attorneys for standard employment law cases of this nature. (Doc. #254-1, at CM/ECF p. 5, ¶ 21). Fiedler has only been awarded an hourly fee in excess of $400.00 in Iowa state court cases. (Doc. #254-1, at CM/ECF p. 3). "Reimbursement for work performed by out-of-town lawyers charging out-of-town rates is generally permitted only when in-town counsel with expertise in a particular area cannot be located." *Petrone v. Werner Enters.,* No. 8:11CV401, 2018 U.S. Dist. LEXIS 21606, at *18 (D. Neb. Feb. 9, 2018). In the complex class action case of *Petrone* involving FLSA claims, market rates of $300-425 an hour for out-of-town Philadelphia attorneys in class action lawsuit were reduced to rates ranging from $200-$325. In this case, local counsel Kelly Brandon also represented Plaintiff and charged the reasonable market rate of $300.

"In determining how other elements of the attorney's fee are to be calculated, we have consistently looked to the marketplace as our guide to what is 'reasonable.'" *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S. Ct. 2463, 2470 (1989). The Court must look to the "rates and practices prevailing in the relevant market." *Id.* at 286. See *Safelite Grp., Inc. v. Rothman,* No. 17-2974, 2019 U.S. App. LEXIS 1531, at *5 (8th Cir. Jan. 17, 2019) (attorney's fee award of less than 50% of requested amount due to application of local rates to out-of-state counsel was affirmed).

In the decision on attorney's fees requested in the case of *Sampson v. Lambert*, 8:07CV155, 2014 WL 1309556, *4-5 (D.Neb. March 31, 2014) (emphasis added), Maren Chaloupka billed at a rate of $125-$195, with 20 years of experience and over 68 civil and criminal appeals in the state and federal courts. The *Sampson* case was an "immensely complex case that spanned over 6 years and included extensive motion practice" and expert discovery that settled just prior to trial, and the attorney's fees in the amount of $199,675 were determined by the court to be more than fair and reasonable. 2014 WL 1309556, *17-18. For Plaintiff's case, spanning a little less than 3 years from

the filing of the lawsuit to trial, Plaintiff requests a total of $653,034 in attorney's fees, more than three times the amount than was awarded in *Sampson*. The rate of $475 is more than double than the rate requested and awarded in *Sampson*, and Fiedler has tried approximately the same number of cases (Doc. #254-1, at CM/ECF p. 2, ¶¶ 11-12) as Chaloupka as of the date of the *Sampson* award. See also *Dean v. Cty. of Gage,* No. 4:09CV3144, 2016 U.S. Dist. LEXIS 123191, at *8, 25-26 (D. Neb. Sep. 6, 2016) (Beatrice 6 case involving § 1983 claims against Gage County including a trial and multiple appeals, Chaloupka's attorney fee rate increased to $250 an hour, and she was awarded just over $300,000). Plain comparison of the numbers shows Plaintiff's fees are unreasonable and excessive.

No Nebraska attorneys providing affidavits used in support of the fee application expressed an opinion that a rate of $475 charged by Fiedler was fair and reasonable. Further, Maren Chaloupka, the plaintiff's counsel in the *Sampson* case, *supra,* submitted an affidavit stating that "[b]ased upon my knowledge of rates charged by other attorneys in this geographic area with similar practices and experience, I believe that a rate of $300/hour is reasonable, fair and customary for the type of complex litigation that was presented by this case." (Doc. #254-7, at CM/ECF p. 3, ¶ 7). In comparison, the $475 rate requested by Fiedler would be in excess of the attested reasonable rate by more than $175. If Fiedler's billable hours of 533.50 in the first application (Doc. #252, at CM/ECF p. 3); (Doc. #254-2, at CM/ECF p. 51-68) and 41.90 hours in the supplemental application (Doc. #298, at CM/ECF p. 1); (Doc. #299-8, at CM/ECF p. 4-6), for a total of 575.4 hours, were multiplied by the more reasonable rate of $300, her total attorney's fees would be reduced more than $100,000 from $273,727.50 to $172,620.00, which is still an exorbitant amount of attorney's fees for just one of 10 attorneys who billed hours on this case. (Doc. #298, at CM/ECF p. 1-2).

In the case of *Tramp v. Associated Underwriters, Inc.,* No. 8:11CV371, 2015 U.S. Dist. LEXIS 141086, at *10 (D. Neb. Oct. 16, 2015), another Nebraska employment law case before the Honorable Judge Smith Camp that resulted in a jury trial in 2015 and a successful plaintiff's verdict, the total amount of attorney's fees of $132,198.80 was awarded at an hourly billable rate of $300. As recently as 2011, Fielder was awarded an hourly rate of $300. (Doc. #254-1, at CM/ECF p. 4). Based on the standard rate in the District of Nebraska, City would request that Fiedler's rate be reduced from $475 to $300, which would reduce the attorney's fees billed by that single attorney from $273,727.50 to $172,620.00, to the extent the Court does not consider further reduction of her fees for block billing or due to the unreasonable amount of hours as raised in other sections of this brief.

## IV.    **Block Billing.**

Reductions of attorney's fees may be made for "block billing" or poor record-keeping. *Ryan Data Exch., Ltd. v. Graco, Inc.,* 913 F.3d 726, 736 (8th Cir. January 10, 2019). In the Eighth Circuit case *Miller v. Dugan*, 764 F.3d 826, 832 (8th Cir. 2014), the court affirmed district court's decision not to award attorney's fees for block billing. In the case of *Bowen v. Allied Prop. & Cas. Ins. Co.,* No. 4:11CV3163, 2013 U.S. Dist. LEXIS 33174, at *22 (D. Neb. Mar. 11, 2013), block billing resulted in 15% reduction in hours for duplication of effort and deduction of entire days of billing time with no delineation to determine improper billing. In the case of *Gilster v. Primebank*, 884 F. Supp. 2d 811, 873-74 (N.D. Iowa 2012), involving an application for attorney's fees by Plaintiff's counsel Paige Fiedler in federal court in Iowa, the judge stated that "block-billing is anathema," then chided the attorneys for failing to follow the local rule expressly requiring itemization, and ultimately reduced the fees by a percentage amount across the board.

A large number of the entries on Plaintiff's attorney's fees statements consist of "block billings" of more than an hour that describe several different matters for which Plaintiff is seeking

compensation. Each attorney or biller generally only has one entry per day, describing all of the sundry activities that person worked on during the day, but not revealing the amount of time spent on each of those activities. For example, on January 22, 2019, attorney Kelly Brandon billed 8.2 hours for "TRIALPREP" for the following block activities:

> Reviewed Defendant's exhibits; email with Ms. Burt re: deposition summaries; reviewed revised PTC Order from Judge Zwart; emails with Ms. Elliott regarding trial scheduling; emails with Dr. Bonta re: potential report/testimony; emails with Tracy re: exhibits; emails with Donna re: exhibits; formulated argument for RSI issue Motion in Limine; worked on Hurd trial outline; emails with client; reviewed Order rescheduling pretrial conference; prepared for Pretrial Conferece [sic]; worked on 1Oth Supplemental Response to Request for Production of Documents.

(Doc. #254-2, at CM/ECF p. 45). The description of this work consists several different categories of work, such as emails, preparing a trial outline, reviewing exhibits, and drafting supplemental discovery responses. Therefore, Plaintiff seeks fees for the billing 8.2 hours in one day for a total of $2,460.00, but it is impossible for City or the Court to know whether the amount of time spent on any of these items was reasonable.

Additional examples of block billing occurs during the depositions in October 2017. On October 17, 2017 the 8.90 hours billed by Paige Fiedler for a total amount of $4,227.50 for "DISCOVERY" that included "Reviewed documents; prepared for depositions; emails to and from Kelly re: promotional lists." There is no way to know the number of hours spent on each task, the description "[r]eviewed documents" is sufficiently vague. In fact, the deposition of Kimberly Taylor-Riley occurred on this date for a little over 6 hours and was conducted by Kelly Brandon, not Fiedler. (Doc. #301-3, at CM/ECF p. 1) On the very next day, October 18, 2017, Fiedler bills **15.70 hours** for a total amount of $7,457.50 for the following: "Prepared for depositions; took depo of Huff & McDaniel; discussions with Troy & Kelly; reviewed documents; emails with Kelly; emails with Nate re: document download." (Doc. #254-2, at CM/ECF p. 52), meaning only 8.3 hours of that day were not spent working, and presumably Fiedler found time to sleep and eat.

The next day, on October 19, 2017, Fiedler billed 14.50 hours for a total amount $6,887.50 as she "[p]repared for depos; email with Kelly re: Jamie Pospisil; emails with Kelly & Stephanie re: Casady documents; took depos of Bonin & Casady; meeting with Troy." (*Id.*) In total, the depositions on October 19, 2017 took less than 6 hours. (Doc. #301-3, at CM/ECF p. 1). Nearly all of Fiedler's billing entries are block billings by date (Doc. #254-2, at CM/ECF p. 51-68), and her attorney's fees of $273,200.00 represent nearly one-half of the total attorney's fees of $653,034.40 requested. (Doc. #298, at CM/ECF p. 1-2).

It is impossible to calculate with any certainty how many hours any of the attorneys spent, because dozens of other matters are intermixed in the daily entries for each attorney. It may have taken 0.1 hours, or it may have taken 2 hours. City and the Court are therefore deprived of any reasonable opportunity for determining whether the time Plaintiff's attorneys spent on these tasks were reasonable or excessive. Plaintiff is therefore unable to establish whether the time spent on any particular item was reasonable. And because there is no showing for discrete items, it follows that Plaintiff cannot establish the reasonableness of the requested fees in total.

Plaintiff's counsel has the ability to code and separate tasks individually, as billing software allows many attorneys to do (Doc. #301-1, at CM/ECF p. 1-2, ¶¶ 3-5) and which Kelly Brandon did on a variety of dates. Nevertheless, counsel has chosen not to supply the Court or City with detailed information that would permit any detailed analysis of the time it spent on the tasks on certain days for which it seeks an award of attorneys' fees. Therefore, City would request a percentage reduction of the total attorney's fees billed in a percentage of at least 20%.

## V.    Irrelevant Activity, Egregious/Erroneous Billing, Over-Lawyering and Vague Descriptions.

A court is charged with excluding hours not reasonably expended because "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party

should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Quigley v. Winter,* 598 F.3d 938, 956-57 (8th Cir. 2010), citing *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal citations omitted). "A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *Murray v. Collections Acquisitions, LLC*, No. 8:11CV301, 2012 U.S. Dist. LEXIS 92044, at *7 (D. Neb. July 3, 2012), quoting *A.J. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). The Eighth Circuit has stated "the complexity of the issues in this case simply did not warrant the requested amount of 'lawyering'" and that there was a "significant amount of duplicative work," reducing by one-third (1/3) the hours billed. *Quigley v. Winter,* 598 F.3d 938, 958 (8th Cir. 2010).

Clearly there was duplication of effort among these attorneys, including more than one attorney for Plaintiff at most depositions (Doc. #301-3, at CM/ECF p. 1). While some duplication here and there is to be expected, the billing statements do not permit any critical examination of the extent of duplication, whether it was necessary, or whether there was padding. Plaintiff also billed for some activities that were irrelevant, egregious, erroneous, or vague, or just plainly involved over-lawyering. The following fees in the amount of $21,191.00 should be disallowed.

| Staff and Date | Description | Rate/ Hours | Amount | Citation | Objection |
|---|---|---|---|---|---|
| Brandon - 07/14/2015 | Emails to and from Dr. Greiner regarding potential consult | $275.00/ 0.2 | $   55.00 | (Doc. #254-2, at CM/ECF p. 17) | Dr. Greiner was not named as a witness or play any role in the litigation. |
| Brandon - 04/18/2016 | Met with witness | 275.00/ 0.9 | $   247.50 | (Doc. #254-2, at CM/ECF p. 20) | Vague - witness not identified |
| Brandon - 10/11/2017- 10/17/2017 | Several entries detailing review of Taylor-Riley file and preparing for deposition. | $275.00/53 | $14,575.00 | (Doc. #254-2, at CM/ECF p. 28-29) | Plaintiff bills for 53 hours preparing for a deposition lasting only 7.4 hours. This is excessive for the task. (Doc. |

9

| | | | | | |
|---|---|---|---|---|---|
| | | | | | #114-1 at CM/ECF p. 1); (Doc. #301-3, at CM/ECF p. 1). |
| Brandon - 01/09/2018 | Drafted memo for interview of witness | $300.00/0.5 | $    150.00 | (Doc. #254-2, at CM/ECF p. 34) | Vague - witness not identified |
| Brandon - 09/11/2018 | Telephone conference with witness; researched travel rules for witness | $300.00/0.5 | $    150.00 | (Doc. #254-2, at CM/ECF p. 40) | Vague - witness not identified |
| Brandon - 12/04/2018 | Appear for videotaped deposition of mayor Beutler emails with Paige re: same | $300.00/4.4 | $1,320.00 | (Doc. #254-2, at CM/ECF p. 43) | Excessive billing. Mayor Beutler's deposition lasted 1 hour 54 minutes. (Doc. 214-1 at CM/ECF p. 1). Brandon billed for her travel time in a separate entry. (Doc. #254-2, at CM/ECF p. 43) |
| Brandon - 01/08/2019 | Communicated with various witnesses re: trial testimony/prep | $300.00/0.4 | $    120.00 | (Doc. #254-2, at CM/ECF p. 43) | Vague - witness not identified |
| Fiedler - 10/29/2017 | Email from investigator; reviewed witness interview; email from Kelly re: Same | $475.00/0.3 | $    142.50 | (Doc. #254-2, at CM/ECF p. 53) | Vague - witness not identified, investigator and topic of investigation not identified |
| Fiedler - 11/08/2017 | Email from investigator; reviewed witness interviews | $475.00/0.4 | $    190.00 | (Doc. #254-2, at CM/ECF p. 53) | Vague - investigator not identified, witness not identified |
| Costello - 02/19/**2015** | Traveled to courthouse to receive verdict | $135.00/0.6 | $      81.00 | (Doc. #254-2, at CM/ECF p. 69) | Verdict was entered in 2019 not 2015; Costello was not present when the verdict was read. |
| Costello - 02/04/2016 | Drafted witness interview memo | $90.00/0.5 | $      45.00 | (Doc. #254-2, at CM/ECF p. 70) | Vague - witness not identified; nature of interview or reason for memo not described. |

| | | | | | |
|---|---|---|---|---|---|
| Costello - 02/12/2016 | Drafted memo re: witness interview | $90.00/1.25 | $ 112.50 | (Doc. #254-2, at CM/ECF p. 70) | Vague - witness not identified; nature of interview or reason for memo not described. Vague - witness not identified; nature of interview or reason for memo not described. |
| Costello - 03/08/2016 | Drafted witness memo for witness interview | $90.00/0.3 | $ 27.00 | (Doc. #254-2, at CM/ECF p. 70) | Vague - witness not identified; nature of interview or reason for memo not described. |
| Costello - 05/23/2016 | Call to witness for interview; drafted witness memo | $90.00/ 0.2 | $ 18.00 | (Doc. #254-2, at CM/ECF p. 70) | Vague - witness not identified; nature of interview or reason for memo. |
| Costello - 02/07/2019 | In Trial | $135.00/0.4 | $ 54.00 | (Doc. #254-2, at CM/ECF p. 80) | Costello was not seated at counsel table or participating in the trial. (Doc. #301-1, at CM/ECF p. 3, ¶ 9) |
| Costello - 02/15/2019 | In Trial | $135.00/3.3 | $ 445.50 | (Doc. #254-2, at CM/ECF p. 80) | Costello was not seated at counsel table or participating in the trial. Doc. #301-1, at CM/ECF p. 3, ¶ 9) |
| Costello - 02/19/2019 | Reviewed Jury Verdict; appeared at courthouse for open verdict/in-chambers conference to receive verdict form. | $135.00/1.3 | $ 175.50 | (Doc. #254-2, at CM/ECF p. 80) | Costello was not seated at counsel table or participating in the trial. It was not necessary for Costello to appear for receipt of verdict. (Doc. #301-1, at CM/ECF p. 3, ¶ 9) |
| Robb - 03/29/2019 | Drafted affidavit re: juror interviews | $70.00/3.4 | $ 238.00 | (Doc. #299-8, at CM/ECF p. 7) | This affidavit is one page long. (Doc. #278.7). Charges for over three hours of work is excessive. Further, Samantha Robb as not |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | identified at all in Plaintiff's motion for fees. (Doc. #298) |
| Fiedler-Carson - 01/28/2019 | Researched adverse employment actions and whether a rescinded action is still adverse, emailed cases to Paige | $150.00/0.4 | $    60.00 | (Doc. #254-2, at CM/ECF p. 49) | No argument in this case about rescinded adverse employment actions. |
| Fiedler-Carson - 02/01/2019 | Researched ADEA, NFEPA discrimination cases for Paige, downloaded, emailed cases to Paige | $150.00/0.2 | $    30.00 | (Doc. #254-2, at CM/ECF p. 50) | This case did not involve claims under ADEA. |
| Borland - 09/21/2015 | Emails with Kelly re: FIOA request | $175.00/0.1 | $    17.50 | (Doc. #254-2, at CM/ECF p. 50) | City never received FOIA request in case. |
| Borland - 10/11/2016 | Reviewed depositions/discovery | $175.00/2.5 | $   437.50 | (Doc. #254-2, at CM/ECF p. 50) | No discovery was served until November 2016 and no depositions were taken until October 2017. (Doc. #301-1, at CM/ECF p. 2, ¶ 8) |
| Leahy - 08/31/2016 | File review; review of pleadings to formulate witnesses for investigation/case overview memo for Kelly | $275.00/3.0 | $   825.00 | (Doc. #254-2, at CM/ECF p. 50) | Vague - Amended Complaint was filed on June 30, 2016 (Doc. #18), Discovery did not begin in earnest until 2017. Mr. Leahy did not submit an affidavit in support of his fees as required by NECivR 54.4(c). |
| Leahy - 09/01/2016 | Reviewed files and pleadings for overview memo | $275.00/2.5 | $   687.50 | (Doc. #254-2, at CM/ECF p. 50) | See above. |
| Leahy - 09/16/2016 | Reviewed files and pleadings | $275.00/1.5 | $   412.50 | (Doc. #254-2, at CM/ECF p. 50) | See above. |
| Leahy - 12/01/2016 | Reviewed file documents; telephone call with witness | $230.00/2.5 | $   575.00 | (Doc. #254-2, at CM/ECF p. 50) | Vague - See above. Inexplicably his rate goes down. |
| | | **TOTAL** | **$21,191.00** | | |

**VI.**     **Briefing was unnecessarily lengthy and disproportionate to case.**

The case of *El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010) states that in "determining whether a fee award is reasonable and necessary, the key component is the exclusion of hours that are excessive, redundant, or otherwise unnecessary." In *El-Tabech,* the court remanded a case for reconsideration of attorney fees when the attorneys spent "141 hours drafting the brief in support of this motion, 67.7 hours drafting the reply brief, and 23.8 hours preparing for and attending the motion hearing" as an "unreasonable and unnecessary amount of time to spend on the successful portion of the motion." 616 F.3d at 843.

Plaintiff's excessive billing is most apparent in its request for attorney's fees and submitted material on summary judgment. City's total briefing on its motion for summary judgment totaled 124 pages. (Doc. #108); (Doc. #128). Plaintiff's briefing reached a disproportionate 221 pages, in one brief. (Doc. #128). The Court's order on summary judgment expresses some consternation over the number of pages submitted for briefing and evidence on summary judgment. (Doc. #136, at CM/ECF p. 2, fn 3, "345 pages of briefing"); (Doc. #136, at CM/ECF p. 12, fn 9-10 "lengthy, single-spaced, and citation-filled responses); (Doc. #136, at CM/ECF p. 37, fn 20, "2,000 pages of exhibits"); (Doc. #136, at CM/ECF p. 46, "massive evidentiary submissions and overly lengthy briefs"). Plaintiff's fee report contains the following record of attorney time and associated costs of the unnecessarily lengthy briefing on the summary judgment motion in the total amount of $42,313 in attorney's fees:

| Attorney | Hours | Fee | Citation |
|----------|-------|-----|----------|
| Kresha | 1.1 | $99.00 | (Doc. #254-2, at CM/ECF p. 17) |
| Kresha | 0.5 | $45.00 | (Doc. #254-2, at CM/ECF p. 17) |
| Carlson | 0.3 | $90.00 | (Doc. #254-2, at CM/ECF p. 17) |
| Brandon | 3.2 | $880.00 | (Doc. #254-2, at CM/ECF p. 19) |
| Brandon | 4.3 | $1,290.00 | (Doc. #254-2, at CM/ECF p. 36) |
| Brandon | 2.2 | $660.00 | (Doc. #254-2, at CM/ECF p. 36) |
| Brandon | 0.8 | $240.00 | (Doc. #254-2, at CM/ECF p. 36) |

| Brandon | 2.2 | $660.00 | (Doc. #254-2, at CM/ECF p. 36) |
|---------|-----|---------|-------------------------------|
| Brandon | 5.5 | $1,650.00 | (Doc. #254-2, at CM/ECF p. 36) |
| Brandon | 0.8 | $240.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 7.2 | $2,160.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 1.9 | $570.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 9.6 | $2,880.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 12.6 | $3,780.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 5.4 | $1,620.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 4.9 | $1,470.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 8.2 | $2,460.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 7.2 | $2,160.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 7.3 | $2,190.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 11.2 | $3,360.00 | (Doc. #254-2, at CM/ECF p. 37) |
| Brandon | 10.2 | $3,060.00 | (Doc. #254-2, at CM/ECF p. 38) |
| Brandon | 8.2 | $2,460.00 | (Doc. #254-2, at CM/ECF p. 38) |
| Costello | 0.4 | $54.00 | (Doc. #254-2, at CM/ECF p. 73) |
| Costello | 1 | $135.00 | (Doc. #254-2, at CM/ECF p. 74) |
| Costello | 0.4 | $54.00 | (Doc. #254-2, at CM/ECF p. 76) |
| Costello | 3.2 | $432.00 | (Doc. #254-2, at CM/ECF p. 77) |
| Costello | 0.6 | $81.00 | (Doc. #254-2, at CM/ECF p. 77) |
| Costello | 2.4 | $324.00 | (Doc. #254-2, at CM/ECF p. 77) |
| Costello | 6.3 | $850.50 | (Doc. #254-2, at CM/ECF p. 77) |
| Costello | 4.3 | $580.50 | (Doc. #254-2, at CM/ECF p. 77) |
| Costello | 5.5 | $742.50 | (Doc. #254-2, at CM/ECF p. 77) |
| Costello | 3.8 | $513.00 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 2.4 | $324.00 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 1.2 | $162.00 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 5.6 | $756.00 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 2.1 | $283.50 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 6.1 | $823.50 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 12.6 | $1,701.00 | (Doc. #254-2, at CM/ECF p. 78) |
| Costello | 3.5 | $472.50 | (Doc. #254-2, at CM/ECF p. 78) |
| **TOTAL** | **175.9** | **$42,313.00** | |

Plaintiff's reimbursement request for work related to summary judgment briefing is equivalent to more than twenty, 8-hour working days, or an entire working month. This is clearly exorbitant and unnecessary. Defendants' briefing amounted to 56% of Plaintiff's briefing on the summary judgment motion. City therefore respectfully requests that Plaintiff's reimbursement for attorney fees related to summary judgment be reduced by 44% to a more proportional and reasonable sum of $23,695.28.

**VII.** **Expert witness fees and attorney's fees for witnesses not called should not be permitted.**

Plaintiff listed Amy Oppenheimer, J.D.; John Bonta, M.D.; Rick McNeese, Ph.D.; and Matthew Glenn, M.D. as expert witnesses for trial on the pretrial order (Doc. #195, at CM/ECF p. 6-7); (Doc. #254-2, at CM/ECF p. 4, ¶¶ 13-14); (Doc. #254-2, at CM/ECF p. 7-8, ¶ 29), but did not call any of them to testify (Doc. #260). John Bonta was not disclosed as an expert witness until January 29, 2019 (Doc. #213-4), exactly one week before trial began. Defendants chose not depose any of Plaintiff's expert witnesses, and Plaintiff also did not depose City's expert witnesses Terry Davis, M.D., J.D. or Rosanna M. Jones-Thurman, Ph.D. (Doc. #301-1, at CM/ECF p. 3, ¶ 11). The only expert witness called by Plaintiff to testify at trial was Christiane Tellefsen. (Doc. #260, at CM/ECF p. 2). City addresses below that expert witness fees and expenses in the amount of $17,041.65 for those expert witnesses not called at trail should not be allowed.

Oppenheimer was ultimately not called to testify at trial based on Plaintiff's own decision. Attorney's fees related to Oppenheimer should not be awarded, because Plaintiff voluntarily chose not to call Oppenheimer to testify on human resources investigations and procedures, despite the Court's Order permitting her testimony subject to a limiting jury instruction. (Doc. #157).

The case of *Argenyi v. Creighton Univ.,* No. 8:09CV341, 2014 U.S. Dist. LEXIS 63726, at *20 (D. Neb. May 8, 2014) is distinguishable, because the non-prevailing party withdrew its defense two weeks after the expert report was submitted and only then was the motion to strike the expert designation granted. In this case, the Court had not entered any formal orders striking the expert designations of Oppenheimer and would have allowed her testimony subject to the jury instruction. The attorney's fees related to Amy Oppenheimer, Ph.D. in the amount of $37,990.65, including the fees expended on the *Daubert* motion in the amount of $7,328.50, should therefore be excluded. (Doc. #301-9). Likewise, the attorney's fees and expenses related to Rick McNeese,

M.D., who was also not called, should also be excluded in the amount of $16,019.50. (Doc. #301-10).

   With regard to Bonta, his designation as an expert witness was out of time; therefore, his fee and any related attorney's fees or expenses associated with his testimony should be disallowed. See also *Miller v. Dugan,* 764 F.3d 826, 832 (8th Cir. 2014) (attorney's fees for unsuccessful motion may be denied due to requirement that redundant or unnecessary time be excluded from an award under *Hensley*); *Schreiber v. Nebraska,* No. 8:05CV537, 2007 U.S. Dist. LEXIS 49570, at *6-7 (D. Neb. July 10, 2007) (attorney's fees working with proposed expert witnesses were excluded when one witness was excluded from testifying at trial due to a motion in limine and the second witness not being called during trial). The attorney's fees and expenses of John Bonta, M.D. of $16,894.00 should therefore be excluded. (Doc. #301-9).

## VIII.   Clerical or secretarial tasks should not be billed at a paralegal rate.

   "Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)  "In calculating attorneys' fees, 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.'" *Murray v. Collections Acquisitions, LLC*, No. 8:11CV301, 2012 U.S. Dist. LEXIS 92044, 2012 WL 2577211, at *2 (D. Neb. July 3, 2012) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288, 109 S. Ct. 2463 (1989)). See also *Bowen v. Allied Prop. & Cas. Ins*. Co., No. 4:11CV3163, 2013 U.S. Dist. LEXIS 33174, at *13-16 n.10 (D. Neb. Mar. 11, 2013) (reducing attorney's fees when counsels' billing records included billing at a paralegal rate or clerical tasks like filing, preparing correspondence, issuing summons, gathering, delivering, assembling, and organizing materials).

   "Secretaries' salaries come within a firm's overhead. Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee shifting case." *Gilster v. Primebank*, 884 F.

Supp. 2d 811, 872 (N.D. Iowa 2012). *Gilster* was a case tried by Plaintiff's counsel in which the

United States District Court for the Northern District of Iowa  explicitly denied award of fees for

Plaintiff's  legal secretary or assistant Cheryl Smith, who has billed $1,350 in fees in this case. Just

like Smith, the other legal secretaries billing in fees in this case should also be denied. (Doc. #298,

at CM/ECF p. 2).

Plaintiff bills for 252.9 hours of legal secretary work at a rate of $90.00 per hour for a total

amount of $22,761. (Doc. #298, at CM/ECF p. 2) At the outset, Plaintiff did not comply with

NECivR 54.4(a)(3), because the support staff rate of pay has not been disclosed. All of the work

billed at the $90.00 per hour rate is clerical or secretarial work rather than paralegal work and

should be incorporated into Plaintiff's counsel's overhead costs.  None of the work performed at

the $90.00 per hour rate required the specialized legal education, training, or skill of a paralegal.

In fact, all of the support staff included in Plaintiff's summary of staff fees are legal secretaries,

and *not* trained paralegals. (Doc. #298, at CM/ECF p. 2).

Plaintiff should not be awarded any of the $22,761 in requested fees for the work performed

by Tracy McKibben, Dona Coltrane, Cheryl Smith, or Robin Daisy-Jahn (Doc. #301-2) as the

billings clearly show all the work was secretarial in nature. (Doc. #298, at CM/ECF p. 2); (Doc.

#254-2, at CM/ECF p. 3-4, ¶ 18); (Doc. #254-2, at CM/ECF p. 15-16); (Doc. #254-2, at CM/ECF

p. 68-69); (Doc. #254-2, at CM/ECF p. 81-82); (Doc. #299-8, at CM/ECF p. 1, 6, 7-8). Legal

Assistant Robin Daisy-Jahn attended trial with Plaintiff's counsel, and while there performed

secretarial work and operated Plaintiff's electronic trial software (Doc. #254-2, at CM/ECF p. 68-

69), which work did not require specialized legal training and does not warrant compensation at a

rate of $90.00 per hour.

Further, the fees of the law clerks requested do not comply with the local rule NECivR

54.4(a)(3) that states "[i]f a….law student performed any services, state the salary or other wage

rate at which the attorney or law firm pays the paralegal or law student." The fees charged by law clerk Ellen Kresha in the total amount of $162.00 should therefore be disallowed. (Doc. #298, at CM/ECF p. 2); (Doc. #254-2, at CM/ECF p. 16-17). Likewise, the fees charged by Stephanie Costello at the rate of $90.00 while she was a law clerk from February 9, 2015 to September 29, 2017 (Doc. #254-2, at CM/ECF p. 69-73), for a total amount of 132.55 hours and total amount of fees of $11,983.50, should be disallowed.

Any fees of any of the legal assistants should be included in Plaintiff's counsels' overhead costs. Therefore, City requests that the Court disallow the $22,761 in legal assistant fees requested in Plaintiff's First Supplemental Motion for Attorney Fees and Expenses (Doc. #298, at CM/ECF p. 2) be disallowed by the Court.

## IX.  Unnecessary or supplemental costs should not be awarded.

Title VII permits courts to award "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008). The amount of costs awarded is "within the sound discretion of the district court." *Poe v. John Deere Co.,* 695 F.2d 1103, 1108 (8th Cir. 1982). Local rule NECivR 54.4(b) requires that expenses be identified with particularity. "As a general rule, reductions for insufficient documentation and the like are to be included in the calculation of the lodestar." *Weaver v. Clarke*, 933 F. Supp. 831, 838 (D. Neb. 1996) (district court reduced award from amount requested in expenses due to lack of specificity). See also *Ladies Ctr. v. Thone*, 645 F.2d 645, 648 (8th Cir. 1981) (affirming reduction in out-of-pocket expenses as unreasonable as not clearly erroneous). City objects to many of Plaintiff's reported expenses as not properly documented, unreasonable, and unnecessary.

## Kimberley Taylor-Riley Interview Expenses

18

Plaintiff requests reimbursement for expenses incurred interviewing Kimberley Taylor-Riley in St. Louis, MO on September 24, 2018. (Doc. #254-2, at CM/ECF p. 86). Plaintiff is requesting $354.00 for airfare, $14.50 for fuel, $32.00 for parking, $95.99 for a hotel stay, in addition to reimbursement for meals, which is discussed below. Taylor-Riley was deposed, in Lincoln, on October 17, 2017 and remained employed by the City until April of 2018. Counsel for the Plaintiff had ample opportunity to speak with Taylor-Riley, in Lincoln. Further, it was unreasonable and unnecessary for Plaintiff's counsel to travel, by plane to visit Taylor-Riley in person when interviews could easily, and inexpensively, be conducted by phone or video-chat. The entire $496.49 in expenses related to the interview of Taylor-Riley should be denied. Further, the attorney's fees of Kelly Brandon of $4,650.00 for travel to and from Missouri 6 hours each way and meeting for less than 3 hours (Doc. #254-2, at CM/ECF p. 40) should not be awarded.

**Meals and Mileage**

Throughout Plaintiff's expense reports appear charges for meals and mileage. Plaintiff almost universally fails to describe with any particularity who incurred the meal or mileage expense, or why the travel or meal was a necessary expense. Plaintiff requests reimbursement for multiple meals on days depositions were held. Most often, the attorney eating the meal is not identified, nor is any explanation provided for why meal reimbursement is being requested. Some meal reimbursement requests are quite large. Not a single deposition taken by Plaintiff in the case ran over seven (7) hours in one sitting, and Plaintiff's counsel was traveling only 40 miles from her office in Gretna to Lincoln. (Doc. #301-6). Plaintiff also seeks reimbursement for meals during trial preparation and trial, often failing to identify the individual(s) incurring the expense or an explanation why meal reimbursement when Plaintiff's counsel's office is 20 miles from the Federal Courthouse. **No receipts are provided documenting any of the meals**. The following expenses for counsels' meals in the amount of $938.44 should not be awarded:

| Date | Description | Amount | Citation | Objection to Expense |
|---|---|---|---|---|
| 04/25/2017 | Meals - reviewing Hurd file - City of Lincoln | $ 7.21 | (Doc. #254-2, at CM/ECF p. 85) | Plaintiff's counsel offices 40 miles from Lincoln.  Meal reimbursement is unreasonable and unnecessary. |
| 10/18/2017 | Lunch during Deposition - no receipt | $ 17.40 | (Doc. #254-2, at CM/ECF p. 85) | Does not identify whose meal this is. |
| 10/25/2019 | Meals - Lunch for deposition | $ 8.73 | (Doc. #254-2, at CM/ECF p. 85) | Does not identify whose meal this is. Pat Borer was the only scheduled deposition on 10/25/2018. Deposition ended at 12:20 p.m. (Doc. #115-2 at CM/ECF p. 1). No additional depositions scheduled that day. |
| 11/3/2017 | Meals - Lunch for deposition | $ 7.10 | (Doc. #254-2, at CM/ECF p. 85) | Does not identify whose meal this is. |
| 11/28/2017 | Meals - deposition in Lincoln of Pat Borer | $ 7.85 | (Doc. #254-2, at CM/ECF p. 86) | Does not identify whose meal this is. Deposition of Pat Borer ended at 11:53 p.m. (Doc. #115-2 at CM/ECF p. 53).  No other depositions scheduled. |
| 11/28/2017 | Meals - deposition in Lincoln of Pat Borer | $ 8.45 | (Doc. #254-2, at CM/ECF p. 86) | Does not identify whose meal this is. Deposition of Pat Borer ended at 11:53 p.m. (Doc. #115-2 at CM/ECF p. 53). No other depositions scheduled. Duplicate entry for lunch on this date without identifying who billed the meal. |
| 01/18/2018 | Meals - 30(b)(6) deposition in Lincoln | $ 7.85 | (Doc. #254-2, at CM/ECF p. 86) | Does not identify whose meal this is. 30(b)(6) deposition was conducted from 10:38am to 11:20am.  No additional depositions scheduled. (Doc. #301-1, at CM/ECF p. 3, ¶ 10) |
| 02/14/2018 | Meals - at Haymarket when interviewing witness (Stephanie- no receipt) | $ 5.20 | (Doc. #254-2, at CM/ECF p. 86) | Does not identify the witness nor purpose of interview. |
| 09/24/2018 | Meals - dinner on trip to St. Louis for interview of Kimberley Taylor-Riley | $ 20.54 | (Doc. #254-2, at CM/ECF p. 86) | Does not identify whose meal this is. Unnecessary to travel out-of-state to visit witness previously available in Nebraska and subsequently available by phone and/or video conferencing. |
| 09/24/2018 | Meal - lunch in St. Charles, MO | $ 12.38 | (Doc. #254-2, at CM/ECF p. 87) | Does not identify whose meal this is. Unreasonable and unnecessary to visit witness out-of-state. |

| | | | | |
|---|---|---|---|---|
| 09/25/2018 | Meals - lunch in Jefferson City, MO at Panera Bread | $ 12.46 | (Doc. #254-2, at CM/ECF p. 87) | Does not identify whose meal this is. Unreasonable and unnecessary to visit witness out-of-state. |
| 12/04/2018 | Dinner after Beutler depo in Lincoln | $ 45.40 | (Doc. #254-2, at CM/ECF p. 88) | Does not identify whose meal this is. Mayor Beutler's deposition was conducted from 2:04 p.m to 3:58 p.m. Meals unnecessary. |
| 02/01/2019 | Meals during trial prep | $ 3.02 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal this is. No explanation why meal reimbursement is necessary while preparing for trial. |
| 02/01/2019 | Meals during trial prep | $ 24.67 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal this is. No explanation why meal reimbursement is necessary while preparing for trial. |
| 02/01/2019 | Meals during trial prep | $ 37.38 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal this is. No explanation why meal reimbursement is necessary while preparing for trial. |
| 02/03/2019 | Meals during trial prep | $ 3.30 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal this is. No explanation why meal reimbursement is necessary while preparing for trial. |
| 02/04/2019 | Meals during trial prep | $ 125.95 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal this is. No explanation why meal reimbursement is necessary while preparing for trial. |
| 02/04/2019 | Meals during trial prep | $ 3.30 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal this is. No explanation why meal reimbursement is necessary while preparing for trial. |
| 02/06/2019 | Meals during trial | $ 71.41 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal(s) this is. No explanation for what meal(s) required reimbursement. |
| 02/06/2019 | Meals during trial | $ 11.06 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal(s) this is. No explanation for what meal(s) required reimbursement. |
| 02/07/2019 | Meals during trial | $ 78.48 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal(s) this is. No explanation for what meal(s) required reimbursement. |
| 02/10/2019 | Meals- during trial | $ 14.45 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal(s) this is. No explanation for what meal(s) required reimbursement. |
| 02/12/2019 | Meals- during trial | $ 43.28 | (Doc. #254-2, at CM/ECF p. 89) | Does not identify whose meal(s) this is. No explanation for what meal(s) required reimbursement. |

| 02/14/2019 | Meals- during trial | $ 60.00 | (Doc. #254-2, at CM/ECF p. 90) | Does not identify whose meal(s) this is. No explanation for what meal(s) required reimbursement. |
|---|---|---|---|---|
| 02/15/2019 | Meals - lunch after closings- Kelly, Paige, Tracy, Donna, Samantha, Nicole, and Stephanie | $ 111.77 | (Doc. #254-2, at CM/ECF p. 90) | Two attorneys were present with Plaintiff at closing. This entry requests reimbursement for meals for five additional staff. |
| 03/13/2019 | Dinner on 2/8/19 for Paige & Kelly at Stirnella Bar & Kitchen | $ 136.77 | (Doc. #299-9, at CM/ECF p. 1) | This expense is excessive. February 8 was a Friday, counsel presumably returned home after trial recessed Friday afternoon. |
| 03/13/2019 | Dinner on 2/9/19 for Paige & Kelly at J Gilberts | $ 76.03 | (Doc. #299-9, at CM/ECF p. 1) | This expense is excessive. February 9 was a Saturday when court was not in session. |
| | **TOTAL** | **$ 938.44** | | |

City also objects to a several of Plaintiff's requests for mileage reimbursement. Plaintiff's counsel billed both an hourly rate for their time traveling and mileage. Expenses related to travel, when the documentation shows that travel was necessary, should be limited to either mileage, or the attorney's hourly rate, and not both. The following mileage expenses in the amount of $1,291.21 should not be awarded.

| Date | Description | Price | Qty | Amount | Citation | Objection |
|---|---|---|---|---|---|---|
| 10/17/2017 | Mileage for Kelly Brandon to Lincoln for Kimberly Taylor-Riley deposition. | $0.54 | 80.8 | $ 43.63 | (Doc. #254-2, at CM/ECF p. 85) | Brandon billed her hourly fee for travel time as well ($450). (Doc. #254-2, at CM/ECF p. 29) |
| 10/18/2018 | Mileage- Kelly Brandon - attend deposition in Lincoln, NE | $0.54 | 80.8 | $ 43.63 | (Doc. #254-2, at CM/ECF p. 85) | Brandon billed her hourly fee for travel time as well ($450). (Doc. #254-2, at CM/ECF p. 29) |
| 10/19/2017 | Mileage - Stephanie to Lincoln | $0.54 | 80.8 | $ 43.63 | (Doc. #254-2, at CM/ECF p. 85) | Stephanie Castello billed her hourly rate for her travel time ($135). |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | (Doc. #254-2, at CM/ECF p. 74). Costello did not participate in deposition; her presence was unnecessary. (Doc. #301-1, at CM/ECF p. 3, ¶ 9) |
| 10/25/2017 | Mileage - Kelly Brandon - Deposition of Pat Borer | $0.54 | 80.8 | $ | 43.63 | (Doc. #254-2, at CM/ECF p. 85) | Brandon billed her hourly fee for travel time as well ($450). (Doc. #254-2, at CM/ECF p. 30) |
| 11/13/2017 | Mileage to and from Gretna & Lincoln for depositions | $0.54 | 400 | $ | 216.00 | (Doc. #254-2, at CM/ECF p. 85) | Fiedler billed her hourly rate for travel. ($2850.00). (Doc. #254-2, at CM/ECF p. 54) |
| 11/15/2017 | Mileage to and from Lincoln for depos | $0.54 | 390 | $ | 210.60 | (Doc. #254-2, at CM/ECF p. 86) | Fiedler billed her hourly rate for travel. ($2,850.00). (Doc. 254-2, at CM/ECF p. 54) * This may be a duplicate entry. |
| 11/28/2017 | Mileage for deposition in Lincoln of Pat Borer | $0.54 | 80.8 | $ | 43.63 | (Doc. #254-2, at CM/ECF p. 86) | Brandon billed her hourly fee for travel time as well ($450). (Doc. #254-2, at CM/ECF p. 31) |
| 01/09/2018 | Mileage to Lincoln to interview witness | $0.55 | 79.35 | $ | 43.64 | (Doc. #254-2, at CM/ECF p. 86) | Witness interviewed is not identified. Witness could have been interviewed by phone or video chat. |
| 01/18/2018 | Mileage for Kelly for 30(b)(6) deposition | $0.55 | 79.87 | $ | 43.93 | (Doc. #254-2, at CM/ECF p. 86) | Brandon billed her hourly fee for travel time as well ($450). (Doc. #254-2, at CM/ECF p. 35) |

| 10/05/2018 | Mileage for Stephanie to courthouse for investigation | $0.55 | 80.33 | $    44.18 | (Doc. #254-2, at CM/ECF p. 88) | Nature of investigation is not identified. No explanation for why "investigation" could not be performed remotely. |
| 10/12/2018 | Mileage for Stephanie to courthouse for investigation | $0.55 | 80.33 | $    44.18 | (Doc. #254-2, at CM/ECF p. 88) | Nature of investigation is not identified. No explanation for why "investigation" could not be performed remotely. |
| 12/04/2018 | Mileage between Lincoln and Johnston | $0.55 | 385 | $    211.75 | (Doc. #254-2, at CM/ECF p. 88) | Reason for travel is not identified. Fiedler also billed for her travel time at her hourly rate. ($4,702 - travel included in block billing) (Doc. #254-2, at CM/ECF p. 35) |
| 01/29/2019 | Mileage | $5.00 | 1 | $    5.00 | (Doc. #254-2, at CM/ECF p. 89) | No explanation for why this mileage was accrued. No breakdown of miles traveled. |
| 02/01/2019 | Mileage for Tracy to Courthouse | $0.58 | 42.88 | $    24.87 | (Doc. #254-2, at CM/ECF p. 89 | No explanation for why this mileage was accrued. |
| 02/04/2019 | Mileage for Tracy to Courthouse | $0.58 | 42.88 | $    24.87 | (Doc. #254-2, at CM/ECF p. 89) | No explanation for why this mileage was accrued. |
| 02/06/2019 | Mileage for Tracy to Courthouse | $0.58 | 42.88 | $    24.87 | (Doc. #254-2, at CM/ECF p. 89) | No explanation for why this mileage was accrued. Tracy did not participate in trial. |

| 02/08/2019 | Mileage for Tracy to Courthouse | $0.58 | 42.88 | $ 24.87 | (Doc. #254-2, at CM/ECF p. 89) | No explanation for why this mileage was accrued. Tracy did not participate in trial. |
| 02/14/2019 | Robin's Mileage to and from Omaha for Trial 2/11 to 2/14 | $0.58 | 266 | $ 154.28 | (Doc. #254-2, at CM/ECF p. 89) | Legal Assistant, Robin Daisy-Jahn appears to be from Counsel's Des Moines office. Unreasonable and unnecessary to use out-of-state staff when support staff are available in Gretna office. |
| | **TOTAL** | | | $ 1,291.21 | | |

## Pacer/Nebraska.gov Expenses

Pacer fees should not be awarded as all parties in a case and attorneys of record receive one free electronic copy, via the notice of electronic filing or notice of docket activity, of all documents filed electronically. Plaintiff can easily avoid Pacer fees by downloading the documents upon notice.  https://www.pacer.gov/documents/epa_feesched.pdf.  If the Pacer fees are related to legal research, the expense report does not indicate as much or provide any description of why Pacer was accessed and fails to comply with NECivR 54.4(a)(1)(B). The following fees of $266.00 for Pacer access should be denied:

| Date | Description | Price | Quantity | Amount | Citation |
|------|-------------|-------|----------|--------|----------|
| 04/27/2016 | Records from PACER | $ 1.80 | 1 | $ 1.80 | (Doc. #254-2, at CM/ECF p. 84) |
| 07/20/2016 | Records from PACER | $ 9.00 | 1 | $ 9.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 08/02/2017 | Miscellaneous Expense - Pacer-no receipt | $ 2.60 | 1 | $ 2.60 | (Doc. #254-2, at CM/ECF p. 85) |
| 01/15/2018 | Pacer charges - quarterly 10.1.17 to 12.31.17 | $ 13.30 | 1 | $ 13.30 | (Doc. #254-2, at CM/ECF p. 86) |

| 03/31/2018 | Pacer charges for quarter | $ 82.20 | 1 | $ 82.20 | (Doc. #254-2, at CM/ECF p. 87) |
|---|---|---|---|---|---|
| 07/16/2018 | Pacer chares for July invoice | $ 28.90 | 1 | $ 28.90 | (Doc. #254-2, at CM/ECF p. 87) |
| 09/30/2018 | Pacer charges from July through September | $ 66.60 | 1 | $ 66.60 | (Doc. #254-2, at CM/ECF p. 87) |
| 03/13/2019 | Pacer charges from 1/1/19 to 3/12/19 | $ 48.00 | 1 | $ 48.00 | (Doc. #299-9, at CM/ECF p. 1) |
| 03/31/2019 | Pacer bill from 3/13/19 to 3/31/19 | $ 13.60 | 1 | $ 13.60 | (Doc. #299-9, at CM/ECF p. 1) |
| | **TOTAL** | | | **$ 266.00** | |

Plaintiff also requests reimbursement for "Nebraska.gov" charges. Again, Plaintiff provides no explanation of what these charges are for and why they were necessary to the case. The following fees for Nebraska.gov in the amount of $53.00 should be denied:

| Date | Description | Price | Quantity | Amount | Citation |
|---|---|---|---|---|---|
| 03/31/2016 | Miscellaneous Expense - Justice fees or March | $1.00 | 5 | $ 5.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 11/30/2017 | Nebraska.gov searches - November | $1.00 | 3 | $ 3.00 | (Doc. #254-2, at CM/ECF p. 86) |
| 12/31/2017 | Nebraska.gov searches - December | $1.00 | 3 | $ 3.00 | (Doc. #254-2, at CM/ECF p. 86) |
| 01/31/2018 | Nebraska.gov searches - January | $1.00 | 29 | $29.00 | (Doc. #254-2, at CM/ECF p. 87) |
| 09/30/2018 | Nebraska.gov charges for September | $1.00 | 1 | $ 1.00 | (Doc. #254-2, at CM/ECF p. 87) |
| 10/31/2018 | Nebraska.gov charges for October | $1.00 | 5 | $ 5.00 | (Doc. #254-2, at CM/ECF p. 88) |
| 12/31/2018 | Nebraska.gov charge for December | $1.00 | 1 | $ 1.00 | (Doc. #254-2, at CM/ECF p. 88) |
| 01/31/2019 | Nebraska.gov charge for January | $1.00 | 6 | $ 6.00 | (Doc. #254-2, at CM/ECF p. 88) |
| | **TOTAL** | | | **$53.00** | |

## **Westlaw Expenses**

City acknowledges that "if the prevailing party demonstrates that separately billing for [computer-aided research], is the 'prevailing practice in a given community' and that such fees are

reasonable, the district court may award those costs." *Hernandez v. Bridgestone Ams. Tire Operations*, LLC, 831 F.3d 940, 950 (8th Cir. 2016) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)). However, the legal authority to request computerized legal research fees does not absolve Plaintiff from describing, with particularity, what research was done and why it was necessary. NECivR 54.4(a)(1)(B) requires that application for fees and expenses identify with particularity "[f]or research, state who did it, the subjects and issues researched, and whether the results were incorporated into a brief, motion, or pleading." While Plaintiff's expense statements document repeated charges for Westlaw Research, the majority of the Westlaw legal research entries are devoid of any particularity about what research was performed or why. Without a description of the actual research performed or who performed it (seasoned attorney, new associate, law clerk, paralegal) there is no way for City or the Court to determine if the amount billed is reasoned. Therefore, the following expenses for computer aided research in the amount of $3,741.00 should not be awarded:

| Date | Description | Price | Quantity | Amount | Citation |
|------|-------------|-------|----------|--------|----------|
| 09/30/2015 | Westlaw Legal Research Charges for September - 13 minutes | $1.00 | 13 | $  13.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 05/31/2016 | Westlaw Legal Research Charges for May - 121 minutes | $1.00 | 121 | $  121.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 06/30/2016 | Westlaw Legal Research Charges for June - 121 minutes | $1.00 | 78 | $  78.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 07/31/2016 | Westlaw- July legal research, 6 min | $1.00 | 6 | $  6.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 09/30/206 | Westlaw Legal Research Charges for September - 13 minutes | $1.00 | 32 | $  32.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 12/30/2016 | Westlaw Legal Research Charges for January - 49 minutes | $1.00 | 49 | $  49.00 | (Doc. #254-2, at CM/ECF p. 84) |

| 03/31/2017 | Westlaw Legal Research Charges or March - 111 minutes | $1.00 | 111 | $ 111.00 | (Doc. #254-2, at CM/ECF p. 85) |
|---|---|---|---|---|---|
| 11/30/2017 | Westlaw - Legal Research Charges for November - 84 minutes | $1.00 | 84 | $ 84.00 | (Doc. #254-2, at CM/ECF p. 86) |
| 12/31/2017 | Westlaw - Legal Charges for December 554 minutes | $1.00 | 55 | $ 55.00 | (Doc. #254-2, at CM/ECF p. 86) |
| 01/31/2018 | Westlaw - Legal Research Charges for January 151 minutes | $1.00 | 151 | $ 151.00 | (Doc. #254-2, at CM/ECF p. 87) |
| 02/28/2018 | Westlaw - Legal Research Charges for February - 32 minutes | $1.00 | 32 | $ 32.00 | (Doc. #254-2, at CM/ECF p. 87) |
| 03/31/2018 | Westlaw - Legal Research Charges for March - 94 minutes | $1.00 | 94 | $ 94.00 | (Doc. #254-2, at CM/ECF p. 87) |
| 09/30/2018 | Westlaw - Legal Research Charges for September - 96 minutes | $1.00 | 96 | $ 96.00 | (Doc. #254-2, at CM/ECF p. 87) |
| 10/31/2018 | Westlaw - Legal Research Charges for October - 505 minutes | $1.00 | 505 | $ 505.00 | (Doc. #254-2, at CM/ECF p. 88) |
| 11/30/2018 | Westlaw - Legal Research Charges for November - 5 minutes | $1.00 | 5 | $ 5.00 | (Doc. #254-2, at CM/ECF p. 88) |
| 01/31/2019 | Westlaw- January - 1495 minutes; $1/min | $1.00 | 1495 | $1,495.00 | (Doc. #254-2, at CM/ECF p. 89) |
| 03/1/2019 | Westlaw - February Legal Research Charges - 814 minutes | $1.00 | 814 | $ 814.00 | (Doc. #254-2, at CM/ECF p. 90) |
| | **TOTAL** | | | **$3,741.00** | |

**Hotel Expenses**

Counsel hotel and meal expenses should not be reimbursable as they were unnecessary. Plaintiff's lead counsel, Kelly Brandon, maintains an office in Gretna, Nebraska, only 20 miles from the Hruska Federal Courthouse in Omaha where trial was held. (Doc. #301-5). Plaintiff's records are unclear as to what amount is claimed for Brandon's hotel stay. The first submission (Doc. #254-2, at CM/ECF p. 90) an expense of $1,285.68 for "Kelly's hotel during 2 week trial"

is listed.  Plaintiff's supplemental request for expenses (Doc. #299-9, at CM/ECF p. 1) documents "Kelly's hotel during 1st week of trial" at a cost of $948.19.  Regardless, Brandon's office, and presumably her home, is 20 miles from the courthouse where trial was held.  A hotel stay was unnecessary, and those expenses should not be awarded.

The expense for Paige Fiedler's hotel stay is block billed with "meals."  The expense report documents a fee of $1,419.78 for "Paige's hotel and meals during 2 week trial." (Doc. #299-9, at CM/ECF p. 1) It is impossible to determine from this entry what the hotel cost actually was.  City suggests this fee be reduced by $419.78 to $1000.00.

Plaintiff also requests reimbursement in the amount of $642.13 and $940.24 for hotel lodging for Robin Daisy-Jahn. (Doc. #254-2, at CM/ECF p. 89) Daisy-Jahn is a legal assistant in counsel's Des Moines office.  It is unreasonable to request lodging expenses for support staff when staff with the same qualifications are available locally and would not require lodging during the trial. Plaintiff should not be awarded $1,582.00 in hotel expenses for Daisy-Jahn.[1]

**Photocopies/Scanning/Postage**

When a party seeks reimbursement for photocopies, the local rules require the movant set forth "the items copied, why they were copied, how they were used, and the number of pages copied." NECivR 54.4(b)(1).  Plaintiff's expense reports fail to comply with the rule as expenses for "photocopies" repeatedly appear throughout the reports.  No entry for photocopies complies with all the requirements of the rule and there is no way to determine what was copied, for what purpose, and whether the expense incurred is reasonable. Further, Plaintiff repeatedly bills for "scanning" with no explanation of what documents were scanned, for what purpose, or how

---

[1] Counsel's website's "about us" page (https://employmentlawiowa.com/about-us/) displays the firm's professional and support staff.  Staff in the Gretna office have "employmetlawnebraska.com" email addresses displayed below their photos.  Cheryl Smith, Donna Coltrane and Tracy McKibben are all support staff in the firm's Gretna office and all of them billing legal secretary fees in this case, as addressed in other arguments above.

scanning incurred expense for the Plaintiff.  The following expenses for photocopies and scanning should not be awarded.

| Date | Description | Price | Qty | Amount | Citation |
|---|---|---|---|---|---|
| 07/31/2015 | Scanning | $  0.15 | 881 | $  132.15 | (Doc. #254-2, at CM/ECF p. 84) |
| 07/31/2019 | Photocopies | $  0.15 | 145 | $  21.75 | (Doc. #254-2, at CM/ECF p. 84) |
| 11/04/2015 | Photocopies | $  0.15 | 1 | $  0.15 | (Doc. #254-2, at CM/ECF p. 84) |
| 12/01/2015 | Photocopies | $  0.15 | 1 | $  0.15 | (Doc. #254-2, at CM/ECF p. 84) |
| 02/29/2016 | Photocopies for February | $  0.15 | 37 | $  5.55 | (Doc. #254-2, at CM/ECF p. 84) |
| 02/29/2016 | Scanning for February | $  0.15 | 17 | $  2.55 | (Doc. #254-2, at CM/ECF p. 84) |
| 07/31/2016 | Photocopies for July | $  0.15 | 136 | $  20.40 | (Doc. #254-2, at CM/ECF p. 84) |
| 08/31/2016 | Photocopies for August | $  0.15 | 13 | $  1.95 | (Doc. #254-2, at CM/ECF p. 84) |
| 10/31/2016 | Photocopies for October | $  0.15 | 126 | $  18.90 | (Doc. #254-2, at CM/ECF p. 84) |
| 11/30/2016 | Photocopies | $  0.15 | 2 | $  0.30 | (Doc. #254-2, at CM/ECF p. 84) |
| 12/21/2016 | Photocopies - from FedEx Office | $353.74 | 1 | $  353.74 | (Doc. #254-2, at CM/ECF p. 84) |
| 12/30/2016 | Photocopies for December | $  0.15 | 268 | $  40.20 | (Doc. #254-2, at CM/ECF p. 85) |
| 03/31/2017 | Photocopies for March | $  0.15 | 34 | $  5.10 | (Doc. #254-2, at CM/ECF p. 85) |
| 04/10/2017 | Photocopies from FedEx | $  74.02 | 1 | $  74.02 | (Doc. #254-2, at CM/ECF p. 85) |
| 09/30/2017 | Photocopies for September | $  0.15 | 43 | $  6.45 | (Doc. #254-2, at CM/ECF p. 85) |
| 09/30/2017 | Photocopies | $  0.15 | 4 | $  0.60 | (Doc. #254-2, at CM/ECF p. 85) |
| 10/31/2017 | Photocopies for October | $  0.15 | 2009 | $  301.35 | (Doc. #254-2, at CM/ECF p. 85) |
| 10/31/2017 | Scanning - October | $  0.15 | 1715 | $  257.25 | (Doc. #254-2, at CM/ECF p. 85) |
| 10/31/2017 | Photocopies | $  0.15 | 601 | $  90.15 | (Doc. #254-2, at CM/ECF p. 85) |
| 11/30/2017 | Scanning | $  0.15 | 40 | $  6.00 | (Doc. #254-2, at CM/ECF p. 86) |
| 11/30/2017 | Scanning for November | $  0.15 | 192 | $  28.80 | (Doc. #254-2, at CM/ECF p. 86) |
| 11/30/2017 | Photocopies for November | $  0.15 | 2813 | $  421.95 | (Doc. #254-2, at CM/ECF p. 86) |
| 11/30/2017 | Photocopies | $  0.15 | 1858 | $  278.70 | (Doc. #254-2, at CM/ECF p. 86) |
| 12/31/2017 | Photocopies | $  0.15 | 551 | $  82.65 | (Doc. #254-2, at CM/ECF p. 86) |
| 12/31/2017 | Photocopies for December | $  0.15 | 128 | $  19.20 | (Doc. #254-2, at CM/ECF p. 86) |
| 01/31/2018 | Scanning for January | $  0.15 | 205 | $  30.75 | (Doc. #254-2, at CM/ECF p. 87) |
| 01/31/2018 | Photocopies for January | $  0.15 | 292 | $  43.80 | (Doc. #254-2, at CM/ECF p. 87) |
| 03/30/2018 | Photocopies for March | $  0.15 | 1219 | $  182.85 | (Doc. #254-2, at CM/ECF p. 87) |
| 04/30/2018 | Photocopies for April | $  0.15 | 60 | $  9.00 | (Doc. #254-2, at CM/ECF p. 87) |

| Date | Description | Price | Qty | Amount | Citation |
|---|---|---|---|---|---|
| 09/30/2018 | Scanning for September | $ 0.15 | 396 | $ 59.40 | (Doc. #254-2, at CM/ECF p. 87) |
| 09/30/2018 | Photocopies for September | $ 0.15 | 1603 | $ 240.45 | (Doc. #254-2, at CM/ECF p. 88) |
| 10/31/2018 | Photocopies | $ 0.15 | 48 | $ 7.20 | (Doc. #254-2, at CM/ECF p. 88) |
| 10/31/2018 | Photocopies for October | $ 0.15 | 1542 | $ 231.30 | (Doc. #254-2, at CM/ECF p. 88) |
| 10/31/2018 | Scanning for October | $ 0.15 | 285 | $ 42.75 | (Doc. #254-2, at CM/ECF p. 88) |
| 11/30/2018 | Photocopies for November | $ 0.15 | 13 | $ 1.95 | (Doc. #254-2, at CM/ECF p. 88) |
| 12/31/2018 | Photocopies for December | $ 0.15 | 50 | $ 7.50 | (Doc. #254-2, at CM/ECF p. 88) |
| 12/31/2018 | Scanning for December | $ 0.15 | 34 | $ 5.10 | (Doc. #254-2, at CM/ECF p. 88) |
| 12/31/2018 | Photocopies | $ 0.15 | 100 | $ 15.00 | (Doc. #254-2, at CM/ECF p. 88) |
| 01/31/2019 | Photocopies in January | $ 0.15 | 2560 | $ 384.00 | (Doc. #254-2, at CM/ECF p. 89) |
| 01/31/2019 | Photocopies | $ 0.15 | 8606 | $ 1,290.90 | (Doc. #254-2, at CM/ECF p. 89) |
| 02/11/2019 | Photocopies for February to date | $ 0.15 | 1146 | $ 171.90 | (Doc. #254-2, at CM/ECF p. 89) |
| 02/28/2019 | Photocopies | $ 0.15 | 398 | $ 59.70 | (Doc. #254-2, at CM/ECF p. 90) |
| 03/07/2019 | Photocopies for expense receipts | $ 0.15 | 240 | $ 36.00 | (Doc. #254-2, at CM/ECF p. 90) |
| 03/08/2019 | Scanning expense receipts | $ 0.15 | 240 | $ 36.00 | (Doc. #254-2, at CM/ECF p. 90) |
| 03/31/2019 | Photocopies | $ 0.15 | 3 | $ 0.45 | (Doc. #299-9, at CM/ECF p. 1) |
| 04/30/2019 | Photocopies | $ 0.15 | 216 | $ 32.40 | (Doc. #299-9, at CM/ECF p. 1) |
| 05/07/2019 | Photocopies | $ 0.15 | 8 | $ 1.20 | (Doc. #299-9, at CM/ECF p. 1) |
| 05/07/2019 | Scanning | $ 0.15 | 13 | $ 1.95 | (Doc. #299-9, at CM/ECF p. 1) |
| | **TOTAL** | | | **$5,061.56** | |

**Postage**

Plaintiff's expense report lists multiple charges for "postage" with no explanation of what was mailed or why. The postage expenses of $52.33 should not be awarded as Plaintiff has failed to comply with NECivR 54.4(b):

| Date | Description | Price | Qty | Amount | Citation |
|---|---|---|---|---|---|
| 11/04/2015 | Postage | $ 0.49 | 1 | $ 0.49 | (Doc. #254-2, at CM/ECF p. 84) |
| 12/01/2015 | Postage | $ 0.49 | 1 | $ 0.49 | (Doc. #254-2, at CM/ECF p. 84) |
| 07/31/2016 | Postage for July | $ 6.93 | 1 | $ 6.93 | (Doc. #254-2, at CM/ECF p. 84) |
| 11/30/2016 | Postage | $ 0.92 | 1 | $ 0.92 | (Doc. #254-2, at CM/ECF p. 84) |
| 09/30/2017 | Postage | $ 0.46 | 1 | $ 0.46 | (Doc. #254-2, at CM/ECF p. 85) |

| | | | | | |
|---|---|---|---|---|---|
| 10/31/2017 | Postage | $ 7.20 | 1 | $ 7.20 | (Doc. #254-2, at CM/ECF p. 85) |
| 11/30/2017 | Postage | $ 0.92 | 1 | $ 0.92 | (Doc. #254-2, at CM/ECF p. 86) |
| 12/34/2017 | Postage | $ 1.84 | 1 | $ 1.84 | (Doc. #254-2, at CM/ECF p. 86) |
| 01/31/2018 | Postage | $ 0.47 | 1 | $ 0.47 | (Doc. #254-2, at CM/ECF p. 87) |
| 01/31/2018 | Postage for January | $ 0.47 | 1 | $ 0.47 | (Doc. #254-2, at CM/ECF p. 87) |
| 02/28/2018 | Postage | $ 0.94 | 1 | $ 0.94 | (Doc. #254-2, at CM/ECF p. 87) |
| 03/30/2018 | Postage for March | $ 2.47 | 1 | $ 2.47 | (Doc. #254-2, at CM/ECF p. 87) |
| 05/31/2018 | Postage for May | $ 0.48 | 1 | $ 0.48 | (Doc. #254-2, at CM/ECF p. 87) |
| 10/31/2018 | Postage for October | $ 0.49 | 1 | $ 0.49 | (Doc. #254-2, at CM/ECF p. 88) |
| 12/31/2018 | Postage | $ 0.94 | 1 | $ 0.94 | (Doc. #254-2, at CM/ECF p. 88) |
| 01/24/2018 | Postage to mail exhibits to Gretna | $21.35 | 1 | $21.35 | (Doc. #254-2, at CM/ECF p. 88) |
| 01/31/2019 | Postage | $ 0.47 | 1 | $ 0.47 | (Doc. #254-2, at CM/ECF p. 89) |
| 02/28/2019 | Postage | $ 1.00 | 1 | $ 1.00 | (Doc. #254-2, at CM/ECF p. 90) |
| 03/31/2019 | Postage | $ 1.50 | 1 | $ 1.50 | (Doc. #299-9, at CM/ECF p. 1) |
| 04/30/2019 | Postage | $ 1.00 | 1 | $ 1.00 | (Doc. #299-9, at CM/ECF p. 1) |
| 03/31/2019 | Postage | $ 1.50 | 1 | $ 1.50 | (Doc. #299-9, at CM/ECF p. 1) |
| | **TOTAL** | | | **$ 52.33** | |

## Expert Witness Fees

Plaintiff requests reimbursement of $1,090.00 in expenses related to his consulting expert witness, Dr. Hannappel, at Apex Therapy Services. (Doc. #254-2, at CM/ECF p. 84).  There is no way for City, or the Court, to determine what services Apex Therapy provided or whether they were reasonable or necessary to the case.  Defendant was not permitted to depose Dr. Hannappel or subpoena any documents he may have created about Plaintiff. Because it is impossible to determine if these fees are reasonable, they should not be awarded.

Amy Oppenheimer was paid approximately $10,000.00 in expert witness fees (Doc. #299-5) when she was ultimately not called to testify at trial based on Plaintiff's own decision. Oppenheimer's expert witness fees should not be awarded, because Plaintiff voluntarily chose not to call Oppenheimer to testify on human resources investigations and procedures, despite the Court's Order permitting her testimony subject to a limiting jury instruction. (Doc. #157). Plaintiff

is also requesting reimbursement for Oppenheimer's airfare (Doc. #299-9), when Oppenheimer never flew to Nebraska because Plaintiff chose not to call her as a witness.

John Bonta's expert witness fee of $3,125.00 (Doc. #254-2, at CM/ECF, p. 87) should also be excluded, because Bonta was not designated as an expert witness within the disclosure period. Bonta was not disclosed as an expert witness until January 29, 2019 (Doc. #213-4), exactly one week before trial began. (Doc. #301-1, at CM/ECF p. 3, ¶ 11). Plaintiff voluntarily chose not have him testify at trial, even though the Court did not enter a written order on the motion in limine to exclude his testimony in rebuttal to Dr. Jason Kruger's testimony.

Likewise, reimbursement for expenses incurred for the services of Dr. McNeese, Dr. Bonta, and Amy Oppenheimer should be denied because Plaintiff did not call these experts at trial.  The following expert witness fees and expenses should not be reimbursed:

| Date | Description | Amount | Citation |
|------|-------------|--------|----------|
| 09/29/2019 | Expert Fee - retainer for Amy Oppenheimer | $    2,000.00 | (Doc. #254-2, at CM/ECF p. 84) |
| 10/28/2016 | Expert Fee - Balance due to Amy Oppenheimer | $    1,237.50 | (Doc. #254-2, at CM/ECF p. 84) |
| 01/24/2018 | Expert Fee- Oppenheimer, Amy - balance due for report | $    5,637.50 | (Doc. #254-2, at CM/ECF p. 87) |
| 02/13/2018 | Expert Fee - Dr. McNeese | $    3,216.00 | (Doc. #254-2, at CM/ECF, p. 87) |
| 01/24/2019 | Expert Fee - Dr. Bonta | $    3,125.00 | (Doc. #254-2, at CM/ECF p. 88) |
| 01/31/2019 | Expert Fee for Amy Oppenheimer for trial | $    1,224.00 | (Doc. #254-2, at CM/ECF p. 89) |
| 04/11/2019 | Original ticket for Amy on Delta to Omaha | $      351.65 | (Doc. #299-9, at CM/ECF p. 1) |
| 04/24/2019 | Expert Fee - Rick McNeese, PhD for report preparation | $      250.00 | (Doc. #299-9, at CM/ECF p. 1) |
|  | **TOTAL** | **$   17,041.65** |  |

## Other Improper Fees

Plaintiff requests $63.00 in expenses for service of process on Katie Kranau, a potential witness, for deposition.  (Doc. #254-2, at CM/ECF p. 86).  Plaintiff cancelled Kranau's deposition (Doc. #301-4), and Plaintiff should not be entitled to fees and expenses for a deposition cancelled.

Plaintiff's request for reimbursement of $7.58 for "boxes to mail exhibit binders" (Doc. #254-2, at CM/ECF p. 88) should also be denied as basic office supplies are clearly included in the firm's overhead costs.  Plaintiff's expense report contains two charges, one for $75.00 and one for $25.00, for "TransUnion Database" searches for jury phone numbers. (Doc. #299-9, at CM/ECF p. 1). Both charges are unnecessary and unreasonable.  A simple Google search produced phone numbers for all but two jurors for the Defendant. (Doc. #301-1, at CM/ECF p. 3, ¶ 13).

Plaintiff requests fee reimbursement for the services of Tanya Schmell and Kathi Burt. Burt and Schmell appear to be independent contractors.  The expense report detailing Schmell and Burt's fees does not provide an explanation, with any particularity, of the services provided and Defendant is unable to determine whether the fees incurred are necessary or reasonable. The following contractor fees in the amount of $1,099.50 should not be awarded:

| Date | Description | Amount | Citation | Objection |
|---|---|---|---|---|
| 10/31/2017 | October Investigator services for Tanya Schmell - witness contacts | $   49.00 | (Doc. #254-2, at CM/ECF p. 85) | No explanation of what witnesses were contacted or for what purpose. |
| 11/30/2017 | November Investigator services for Tanya Schmell - witness contacts | $   86.00 | (Doc. #254-2, at CM/ECF p. 86) | No explanation of what witnesses were contacted or for what purpose. |
| 12/31/2017 | December Investigator services for Tanya Schmell - witness contacts | $    1.00 | (Doc. #254-2, at CM/ECF p. 86) | No explanation of what witnesses were contacted or for what purpose. |
| 01/31/2018 | January Investigator services for Tanya Schmell - witness contacts | $    1.00 | (Doc. #254-2, at CM/ECF p. 87) | No explanation of what witnesses were contacted or for what purpose. |
| 01/25/2019 | Transcript - Preparation of deposition summaries - Nebraska Paralegal - Kathi Burt | $  962.50 | (Doc. #254-2, at CM/ECF p. 88) | Deposition summaries are not necessary. Considerable expense had already been incurred in conducting and transcribing the depositions in this case. |
|  | **TOTAL** | **$1,099.50** |  |  |

**Expense Reduction Summary**

To summarize, Defendant respectfully requests the amount requested by Plaintiff for expenses related to this case be reduced by $31,301.76 as follows:

| Expense | Reduction Requested |
|---|---|
| Taylor--Riley Interview | $    496.49 |
| Mileage | $    938.44 |
| Meals | $  1,291.21 |
| Pacer | $    266.00 |
| Nebraska.gov | $      53.00 |
| Westlaw | $  3,741.00 |
| Photocopies and Scanning | $  5,061.56 |
| Apex Therapy | $  1,090.00 |
| Expert witness fees | $17,041.65 |
| Postage | $      52.33 |
| Kranau Service | $      63.00 |
| Mailing Boxes | $        7.58 |
| TransUnion Database | $    100.00 |
| Contractor Expenses | $  1,099.50 |
| **TOTAL** | **$31,301.76** |

## X.   The requested reimbursement exceeds awards in similar cases in this District.

Plaintiff cites one single case in the District of Nebraska, *Morales v. Farmland Foods*, No. 8:08CV504, 2013 U.S. Dist. LEXIS 56501, at *11 (D. Neb. Apr. 18, 2013) to support the contention that Plaintiff's extraordinary request for over $735,000.00 of fees and expenses is reasonable and customary. (Doc. #253, at CM/ECF p. 25).   The *Morales* case, which awarded more than one million dollars in fees, is not "similar" to the case at hand.   *Morales* was a class action case where over 30 fact witness depositions were taken and four experts were retained and deposed, requiring substantial travel. (*Id.* at 11).   Notably, the *Morales* court reduced the fee award requested by the defendant's counsel by nearly a million dollars. *Id* at 38. None of the remaining cases cited by Plaintiff arose from the District of Nebraska and therefore should not be considered as comparable.

## XI.   Conclusion.

Defendant City of Lincoln believes it has provided sufficient evidence to merit a reduction in the requested attorney's fees and expenses by Plaintiff as follows:

| Description | Amount of Reduction Requested/Totals |
|---|---|
| Post-Verdict Lack of Success | $  38,813.50 |
| Equal Protection, § 1983 Dismissal | $   10,960.00 |
| Fiedler's Excessive Rate | $ 101,107.50 |
| Vague, Erroneous, Excessive Billings | $  21,191.00 |
| Summary Judgment Over-Lawyering | $  18,616.72 |
| Bonta Attorney fees | $  16,894.00 |
| Oppenheimer Attorney Fees | $  37,990.65 |
| McNeese Attorney Fees | $  16,019.50 |
| Legal Assistant Fees | $  22,761.00 |
| Law Clerk Fees | $  12,145.50 |
| Expenses | $  31,301.76 |
| **Total Fees and Expenses to be Subtracted** | **$327,801.13** |

Defendant City of Lincoln respectfully requests that any entry of an order by the Court on attorney's fees be reduced in the amounts requested above; a percentage reduction of the total fees due to block billing, excess billing, and double billing; that the expenses be reduced by an amount of $31,306.76 as discussed above; and for such further relief that the Court determines necessary to the extent Plaintiff is the prevailing party.

Dated: May 31, 2019.

CITY OF LINCOLN, Defendant

By: */s/ Abigail Littrell,* #24423
    Jocelyn W. Golden, #23039
    Abigail Littrell, #24423
    555 South 10th Street, Suite 300
    Lincoln, NE 68508
    (402) 441-7281
    jgolden@lincoln.ne.gov
    alittrell@lincoln.ne.gov

## CERTIFICATE OF SERVICE

I certify that on May 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  The foregoing document was sent electronically to:

Kelly K. Brandon, kelly@employmentlawnebraska.com
Paige Fiedler, paige@employmentlawnebraska.com
Stephanie Costello, stephanie@employmentlawnebraska.com

By:  */s/ Abigail Littrell*
Abigail Littrell, #24423